In re DeMERT & DOUGHERTY,
INC., Debtor.

Karen R. Goodman, as Trustee
of DeMert & Dougherty,
Inc., Plaintiff,

v.

Phoenix Container, Inc., Joel Schonfeld,
Schonfeld & Weinstein, LLP, Kenneth
Sokoloff, Thomas Bartkovich and
Hollow Brook Holdings, LLC, Defendants.

Bankruptcy No. 98 B 38160.
Adversary No. 00 A 1117.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 10, 2001.

David T.B. Audley, Chapman and Cutler, Chicago, IL, for Plaintiff.

Keith A. Shapiro, Matthew T. Gensburg, Greenberg Traurig, Chicago, IL, Daniel J. McMahon, Rebecca M. Rothmann, Jason M. Kuzniar, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Chicago, IL, for Defendants.

Karen R. Goodman, Hinshaw & Culbertson, Chicago, IL, trustee.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

Trustee Karen Goodman (the "Trustee") brings this adversary proceeding against Defendants Phoenix Container, Inc.

("Phoenix"), Joel Schonfeld ("Schonfeld"), Schonfeld & Weinstein, LLP ("S & W"), Kenneth Sokoloff ("Sokoloff"), Thomas Bartkovich ("Bartkovich"), and Hollow Brook Holdings, LLC ("Hollow Brook"). Defendants move to dismiss, raising both procedural and substantive challenges to the Trustee's suit.

Among the procedural issues raised, Defendants move to dismiss the Trustee's suit for lack of jurisdiction. Alternatively, Defendants ask that the Court either abstain or transfer venue. Addressing the merits, Defendants move under Fed. R.Civ.P. ("Rule") 12(b)(6) and Fed. R. Bankr.P. 7012 to dismiss all counts of the complaint for failure to state a cause of action.

### Preliminary Comment Concerning Use of Evidentiary Materials

Defendants have submitted 16 exhibits, comprised primarily of pleadings from lawsuits in other forums and pleadings from other matters previously before this Court, along with their motion. As part of her response, the Trustee has submitted 13 exhibits to support the allegations of her complaint.[1] Although both sides cite to their exhibits in their arguments on the motion, use of evidentiary materials is limited on a motion of this nature.

 Different standards apply in the determinations as to whether Defendants are entitled to the various forms of relief that they seek. A court may consider

affidavits and other forms of evidence in ruling on the procedural questions of jurisdiction and whether to abstain or transfer venue. *E.g., Remer v. Burlington Area School Dist.,* 205 F.3d 990, 996 (7th Cir. 2000). In contrast, a court generally may not consider materials outside the pleadings in ruling on a motion to dismiss for failure to state a cause of action. *E.g., General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080–81 (7th Cir.1997).

 Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint, *Kaczmarek v. Microsoft Corp.,* 39 F.Supp.2d 974, 975 (N.D.Ill.1999), and a court may take judicial notice of the existence and filing of papers constituting the record in a case. *In re Standfield,* 152 B.R. 528, 531 (Bankr.N.D.Ill.1993). Verified schedules and statements filed by bankruptcy debtors also contain evidentiary admissions. *Id.* However, reference to matters of public record will not defeat a complaint unless the materials unambiguously show that the plaintiff is not entitled to the relief it seeks. *See General Electric Capital Corp.,* 128 F.3d at 1080–81.

In the summary of background facts that follows, there will be some description of other litigation between the parties. However, facts outside the complaint may only be considered in ruling on jurisdiction and in determining whether it is appropri-

---

1. The briefs on this motion contain 131 pages of argument, with numerous cross-references within each brief to other arguments in the brief. Even though the Court allowed the filing of briefs exceeding the page limits under Local Bankruptcy Rule 400.D, where voluminous pleadings of this nature are presented, the parties run the risk that portions of their arguments may be inadvertently overlooked. *Turner v. Chicago Housing Authority,* 760 F.Supp. 1299, 1301 n. 2 (N.D.Ill.1991),

*judgment vacated on grounds of mootness,* 969 F.2d 461 (7th Cir.1992). "Overly long briefs ... may actually hurt a party's case, making it 'far more likely that meritorious arguments will be lost amid the mass of detail.' " *Fleming v. County of Kane,* 855 F.2d 496, 497 (7th Cir.1988) (citing *United States v. Keplinger,* 776 F.2d 678, 683 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986)).

ate to transfer venue or to abstain from hearing this matter.

The role of evidentiary materials is very limited in connection with Defendants' arguments under Rule 12(b)(6). Although the pleadings submitted as exhibits are matters of public record, the record from the other lawsuits is not complete, and there has been no judgment in any of those actions. Because isolated allegations from the pleadings in other suits do not unambiguously establish facts foreclosing the relief that the Trustee seeks, they cannot be considered in ruling on the legal sufficiency of the Trustee's causes of action.

## BACKGROUND

The Trustee filed this lawsuit on December 6, 2000, approximately four months after the settlement of an adversary proceeding (the "First Action") that she had brought against Yasar Samarah ("Samarah") and two other parties associated with Samarah (collectively the "Samarah Defendants"). Defendants here were not parties to the First Action.

### Trustee's First Action

In the Trustee's First Action she complained that Samarah, the former CEO of Debtor DeMert & Dougherty, Inc. (the "Debtor"), had used $100,000 of the Debtor's funds as earnest money for the purchase of the Pail Division of U.S. Can Company ("U.S. Can"). As part of that transaction (the "Phoenix Transaction"), Samarah received 50 percent of the shares of the stock of Defendant Phoenix Container, Inc. ("Phoenix"), the entity that now holds the Pail Division assets. The Trustee further alleged that after the Phoenix Transaction, Samarah conducted certain

aspects of Phoenix's business from the Debtor's place of business and used an additional $50,000 of the Debtor's funds in Phoenix's operations. The Trustee characterized the Phoenix Transaction as a corporate opportunity that had been usurped by Samarah, in breach of his fiduciary duties to the Debtor.

Although alleging in her complaint in the First Action that $75,000 had been repaid to the Debtor, the Trustee stated her belief that Samarah's use of the Debtor's funds was not appropriately characterized as a loan to Samarah. Asserting that the Debtor was the rightful owner of Samarah's Phoenix shares, the Trustee sought an order directing that the Samarah Defendants turn over to her the Phoenix shares for which the Debtor had provided the seed money. In addition, she sought an accounting of the Debtor's assets that had been used to buy Samarah's shares. As part of her request for injunctive relief, the Trustee averred that she had been informed that the Phoenix shares had substantial value and were unique and irreplaceable. The Trustee filed the First Action on March 2, 1999.

### The Samarah Settlement

In or around the beginning of August 2000, the Trustee and the Samarah Defendants reached a settlement (the "Samarah Settlement") to which other Samarah-related entities [2] were also parties. While incorporating a compromise of the First Action, the Samarah Settlement also reflects certain events adverse to Samarah that took place after the Phoenix Transaction. Among those events, U.S. Can apparently was not paid $900,000 of the purchase price of the Pail Division assets. As

---

**2.** Collectively the Samarah Defendants and the other Samarah-related entities are hereafter referred to as the "Samarah Parties."

a consequence, in May 1999, U.S. Can sold 250 shares of Phoenix stock that Samarah had pledged to secure payment of the purchase price. The buyer at the auction sale was American Equities Group, Inc. ("AEG"), the Debtor's secured lender.

As part of the compromise of the Trustee's First Action, the Samarah Settlement assigned certain of Samarah's rights against Defendants to the Trustee. Under the terms of the agreement, the Samarah Parties transferred those 250 shares of Phoenix stock still within their possession and control to the Trustee. In addition, the Samarah Parties assigned to the Trustee "any and all rights and causes of action for dilution of the Phoenix stock held by any of the Samarah Parties, and all rights and causes of action against the Schonfeld Defendants and Other Defendants." However, the settlement contained a provision excepting the following causes of action from the assignment:

all rights and causes of action (i) against the Schonfeld Defendants arising out of or relating to the Schonfeld Defendants' legal representation of any of the Samarah Parties, as alleged in the Legal Malpractice Lawsuit, but not arising out of the Schonfeld Defendants' legal representation of the Debtor; (ii) against the Phoenix Parties, for employee benefits and compensation due from Phoenix, against the Phoenix Parties (other than Phoenix) for breach of fiduciary duties, and against Ken Sokoloff for defamation, all as previously set forth in Cook County Circuit Court Cause No. 99 L 2065; (iii) against Phoenix for indemnity for the cost of defense in the lawsuit captioned *Phoenix Container, Inc. v. Yasar Samarah, et al.*, No. 99 CV 812 and pending in the United States District Court, District of New Jersey (the "New Jersey Lawsuit"), as well as any and all available defenses in the New Jersey Lawsuit; and (iv) the claims for declara-

tory judgment and damages asserted in consolidated Cook County Cause Nos. 99 L 2064 and 99 CH 3125.

Around the time of the Samarah Settlement, the Trustee also entered into a settlement agreement with AEG (the "AEG Settlement"). Under the terms of the AEG Settlement, AEG transferred to the Trustee the 250 shares of Phoenix stock that it had purchased from U.S. Can. At the same time, the Trustee agreed that AEG's liens extended to the proceeds of liquidation or disposition of the Phoenix stock. However, to the extent proceeds would exceed two million dollars, there was a carve-out of five percent for creditors of the Debtor's estate. Through the Samarah Settlement and the AEG Settlement, the Trustee asserts ownership rights to all 500 shares of Phoenix Stock that Samarah allegedly purchased with the Debtor's funds.

*The Samarah Lawsuits*

Turning to the assignment provisions in the Samarah Settlement, at the time of the agreement there were four lawsuits between Samarah and other parties to the Phoenix Transaction (the "Samarah Lawsuits") pending in the Circuit Court of Cook County, Illinois (the "Illinois State Court"). The plaintiffs in the Samarah Lawsuits are: (1) Samarah himself; (2) Samarah Holding Company ("SHC"), an entity that Samarah allegedly controls; and (3) Phoenix Container L.P. ("PCLP"), a limited partnership that Samarah allegedly controls. All of the Defendants in this adversary proceeding are named as defendants in one or more of the Samarah Lawsuits.

All four of the Samarah Lawsuits were filed in late February 1999, shortly after Defendants allegedly held a secret meeting at which they agreed to eliminate Sama-

rah's ownership interest in Phoenix's stock. According to the Trustee, the ultimate goal was that Sokoloff, S & W and Hollow Brook would each come to own one-third of Phoenix's stock. Bartkovich would also be granted the right to receive five percent of Phoenix's stock, contingent upon the elimination of Samarah's shareholder rights.

In pursuit of Defendants' plan, a majority of Phoenix's Board of Directors allegedly voted on February 15, 1999 to issue 1,000 new shares of Phoenix stock at a price of $200 per share. Although the stock was purportedly issued to meet Phoenix's capital needs, the Trustee contends that in reality no consideration was paid, and that the sham stock offering[3] was made to transfer control of the company from Samarah to Defendants. After the share offering resolution was passed, Sokoloff, Schonfeld and Bartkovich voted to suspend compensation to Samarah, and to replace Samarah by appointing Sokoloff as president and CEO.

Reviewing the allegations of the Samarah Lawsuits, in Case No. 99 L 2064, SHC alleged that it had acquired the assets of the Pail Division and then assigned the assets to Phoenix in exchange for a demand note of one million dollars. SHC brought this first suit when Phoenix failed to repay the note. As part of requested relief in a second suit, Case No. 99 CH 3125, SHC sought a declaration that because Phoenix had breached the alleged agreement to repay the debt due SHC, Phoenix's assets belonged to SHC. The two suits were later consolidated, after amendments had been made to those pleadings that are presented as exhibits to

Defendants' motion to dismiss. The amended pleadings from these two Illinois State Court suits are not part of the exhibits on this motion.

In a third suit, Case No. 99 L 2065, Samarah and PCLP asserted claims of breach of fiduciary duties against all of Defendants other than Phoenix. Among the allegations made, Defendants allegedly breached fiduciary duties owed Samarah when they attempted to dilute his shares, strip him of his positions within Phoenix, and repudiate the validity of the one million dollar promissory note. In separate counts against Defendant Sokoloff, Samarah sought damages for defamation and for the willful and malicious withholding of one of Samarah's paychecks.

The fourth of the Samarah Lawsuits, Case No. 99 L 1730, was a malpractice action against Defendants Schonfeld and S & W. Among the allegations in that action, Samarah complained that Schonfeld had failed to honor an oral agreement that would have given Samarah voting control of Phoenix. In addition, Samarah alleged that in an attempt to gain control of Phoenix, Schonfeld had tried to acquire the 250 shares of Phoenix stock that Samarah had pledged to U.S. Can. The two actions for breach of fiduciary duties and malpractice have been consolidated, and an amended complaint was apparently filed in one suit on January 5, 2001. Copies of the amended complaint, and of Defendants' motions to dismiss both actions, have not been included among the exhibits on this motion.

The four Samarah Lawsuits remain pending in the Illinois State Court, al-

---

**3.** In her complaint and the briefs on this motion, the Trustee uses terms such as the "sham stock offering" or "attempted dilution" when referring to the February 1999 offering of Phoenix shares. Such terminology supports the Trustee's theory that the corporate action was void, although the reality is that shares were issued, and that Samarah's percentage ownership interest was diluted. This opinion refers to the February 1999 share offering without adding the descriptive terms used by the Trustee.

though there is no evidence that any of the actions have progressed beyond the pleadings stage. The Trustee states that she has not been made a party to any of the Illinois State Court actions, and it is not known whether or how the pleadings have been amended to reflect the Samarah Settlement.

### The Fisher Lawsuit

The Samarah Lawsuits are not the only actions related to the Phoenix Transaction that have been brought in Illinois. A decision from an action in the United States District Court for the Northern District of Illinois (the "Illinois District Court") indicates that Maurice Fisher ("Fisher"), a British citizen, sued Phoenix to recover on a debt that was assigned to him by the Debtor. Although noting that Fisher's claim arises from Illinois-based transactions and that many material events took place in Illinois, the Illinois District Court observed that a plaintiff's choice of forum is not entitled to great deference where the plaintiff is not a citizen of the forum. Neither Illinois nor New Jersey was Fisher's home forum.

The Illinois District Court granted Phoenix's motion to transfer venue of the action to the United States District Court for the District of New Jersey (the "New Jersey District Court"), commenting that a number of significant events took place in New Jersey, and that there was a related action based on the same underlying transaction pending in the New Jersey District Court. Concerns of judicial economy were found to weigh heavily in favor of transfer, while the convenience of the parties and witnesses only narrowly favored transfer.

### The New Jersey Litigation

Turning to the litigation in New Jersey, on or about February 24, 1999, Phoenix filed a civil action for specific performance, declaratory relief and damages against Samarah and SHC in the New Jersey District Court. As background for its complaint, Phoenix alleged that it acquired its operating assets through two simultaneous agreements involving SHC-first, an agreement between SHC and U.S. Can for purchase of the Pail Division assets, and then an immediate assignment to Phoenix of SHC's rights and duties under the asset purchase agreement. Per the complaint, neither Samarah nor any entity related to him invested any monies in Phoenix.

In the first three counts of its complaint, Phoenix complains that Samarah breached the assignment agreement by refusing to assign the lease of its operating facility to Phoenix, and that as a consequence of not having record ownership of the lease, Phoenix has been unable to refinance outstanding debt. The remaining counts of Phoenix's New Jersey complaint contain allegations that Samarah converted Phoenix's funds, caused a "bogus debt" to be placed on Phoenix's books, was unjustly enriched, and breached fiduciary duties owed Phoenix.

The New Jersey complaint does not address Samarah's allegations that he has been denied his rightful ownership interest in Phoenix. Defendants state that Samarah and SHC have interposed defenses in the New Jersey action, but they have not provided pleadings showing the nature of those defenses. There is no evidence that Samarah has raised dilution or any other of the Illinois State Court issues by counterclaim.

The New Jersey District Court denied Samarah's motion for transfer of venue to the Northern District of Illinois, finding that a significant portion of the events giving rise to the suit occurred in New Jersey, that the leasehold at issue was located in New Jersey, and that Samarah had not shown that litigation in Illinois

would be more convenient than in New Jersey. The New Jersey District Court further found that although Illinois law might control, the District of New Jersey was less congested than the Northern District of Illinois, and the people of New Jersey had an interest in the outcome of the litigation.

Addressing Samarah's request for a stay pending resolution of the Illinois State Court litigation, the New Jersey District Court determined that the issues raised and relief requested in the two forums were not the same. None of the Illinois State Court issues had been raised in the federal proceeding. The New Jersey District Court concluded that even if the litigation had been parallel, exceptional circumstances were not present such that abstention in favor of the Illinois State Court would be appropriate. The mere existence of piecemeal litigation of garden-variety state law issues was insufficient under the holding in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) that abstention is appropriate "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

### Trustee's Complaint

In this adversary proceeding, the Trustee seeks to recover all or a majority of Phoenix's common stock based on theories of constructive trust and breach of fiduciary duties. The relief requested is in some respects different than in the First Action, since the Samarah and AEG Settlements have transferred to the Trustee those shares initially issued Samarah. Now the Trustee would recover those shares of stock owned by Defendants on the theory that because the Debtor financed the Phoenix Transaction, Defendants have been unjustly enriched.

The Trustee alleges in her complaint that most of Defendants were involved in the Phoenix Transaction. Per the complaint, Sokoloff, former sales manager for the Pail Division, and Schonfeld, as attorney for the Debtor, approached Samarah and solicited his assistance in securing cash and financing for the acquisition of the Pail Division. Schonfeld and Sokoloff allegedly insisted that the Debtor provide the cash for the transaction, even though Samarah told them of the Debtor's precarious financial situation. The complaint alleges that it was contemplated that the Debtor and the newly acquired company would eventually merge into a consolidated entity.

The Trustee further alleges that Schonfeld had entered into an undisclosed agreement that would provide him with a financial interest in the new company if he could locate a financing source for the transaction. One or more members of Hollow Brook were participants in the entity that allegedly made the promise to Schonfeld. Although he was being paid by the Debtor for his legal services at the time, Schonfeld allegedly failed to disclose or seek a waiver of the conflict of interest.

Per the complaint, when Phoenix shares were issued at an organizational meeting on or about November 15, 1997, Defendants S & W, Sokoloff, and Hollow Brook were issued 45 percent of Phoenix's shares even though none of them had provided funds for the acquisition. No stock was issued in the Debtor's name, even though the Debtor was the source of the funds needed to close the transaction.

Besides seeking relief for alleged wrongs in connection with the Phoenix Transaction, the Trustee seeks money damages and declaratory relief with respect to the issuance of Phoenix stock to

Sokoloff, S & W, and Hollow Brook in February 1999.

Count I seeks imposition of a constructive trust on those shares of Phoenix stock in the hands of Defendants. Count II seeks declarations that the additional shares issued in February 1999 are void, and that because they were issued for no consideration, shares received by Hollow Brook and S & W in November 1997 are also void. Counts III through V of the complaint are causes of action for breach of fiduciary duties against Defendants Schonfeld, Sokoloff and Bartkovich.

Defendants state that a jury trial has been demanded in the Illinois State Court, and that they would likely demand a jury trial in this case. Defendants do not state whether they would consent to entry of a final order by the Bankruptcy Court.

Although this bankruptcy case commenced as a reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), the case has been converted to a liquidation under Chapter 7. It is undisputed that the Trustee has authority to bring suit on behalf of the Debtor's estate and that any recovery in this litigation would go to unsecured creditors.

## DISCUSSION

Because a favorable ruling on one of Defendants' procedural objections would obviate the need to discuss the substantive issues raised in Defendant's motion, this opinion looks first to the procedural issues presented.

### *Subject Matter Jurisdiction*

■ Where a defendant challenges subject matter jurisdiction, the Court must accept as true all well-pleaded allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Remer v. Burlington Area School Dist.*, 205 F.3d 990, 996 (7th Cir.2000). However, when evidence pertinent to the jurisdictional issue is presented, the court may properly look beyond the jurisdictional allegations of the complaint to determine in fact whether subject matter jurisdiction exists. *Id.*

Bankruptcy jurisdiction is determined under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

■ Jurisdiction over matters "arising under" the Bankruptcy Code or "arising in" bankruptcy proceedings is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankruptcy estate, such as whether to discharge a debtor. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994). These matters are termed "core proceedings" and, for the most part, are enumerated by statute in 28 U.S.C. § 157(b)(2). *Barnett v. Stern*, 909 F.2d 973, 979 (7th Cir.1990). While the Trustee apparently acknowledges that her causes of action would not fall within any of the statutory categories of core matters other than the "catch-all" provision at 28 U.S.C. § 157(b)(2)(O), she argues that core jurisdiction can exist "based on the historic role of the bankruptcy court."

■ The question whether a matter falls within the bankruptcy court's core or "related to" jurisdiction relates to how jurisdiction is exercised—whether the bankruptcy court is limited to making findings and conclusions for the district court, or whether it may issue a ruling outright. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1303 n. 9 (11th Cir.2001). In the decision whether to dismiss for lack of subject matter jurisdiction, it is sufficient for jurisdic-

tional purposes if a case meets the standard for "related to" jurisdiction. *Zahn v. Yucaipa Capital Fund (In re Almac's, Inc.),* 202 B.R. 648, 654 (D.R.I.1996).

The Trustee's cases do not persuade this Court that this action to impose a constructive trust falls within its core jurisdiction. As support for her argument, the Trustee cites several cases containing language to the effect that an action to impose a constructive trust is within the core jurisdiction of the Bankruptcy Court. *See Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 402 (4th Cir.1992); *Kaiser Aerospace and Electronics Corp.v. Teledyne Industries, Inc.,* 229 B.R. 860, 876 (S.D.Fla.1999), *aff'd in part and rev'd in part,* 244 F.3d 1289 (11th Cir.2001); *In re Richmond Children's Center, Inc.,* 49 B.R. 262, 264 (S.D.N.Y.1985), *rev'd on other grounds,* 58 B.R. 980 (S.D.N.Y.1986); *Hauytin v. Grynberg,* 52 B.R. 657, 661 (Bankr.D.Colo.1985)

The *Kaiser Aerospace* decision involved a fact situation not even remotely analogous to that presented here, however, and the other decisions are all distinguishable in that creditors asserted rights to property already in the possession of the debtor. If a constructive trust were found, the property would go to those creditors that were beneficiaries of the trust, rather than to creditors generally. *See, e.g., XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1449–51 (6th Cir.1994); *Berger, Shapiro & Davis, P.A. (In re Foos),* 183 B.R. 149, 160–61 (Bankr. N.D.Ill.1995). *See also Richmond Children's Center,* 49 B.R. at 264–65. Neither the bankruptcy trustee nor the estate would have been the beneficiary of the constructive trust in the cases relied on by the Trustee.

Here, the estate has already recovered those shares of Phoenix stock that Samarah allegedly purchased with the Debtor's funds, and the property alleged to be held in constructive trust is in the possession of third parties. The cause of action is in some respects comparable to a suit to recover a fraudulent transfer, but it does not fall within the Bankruptcy Court's core jurisdiction under 28 U.S.C. § 157(b)(2)(H). Most significantly, since most of the Debtor's assets have already been liquidated, resolution of the suit will have no impact on the administration of the estate, other than to augment the assets of the estate for general distribution to creditors. *Compare In re United States Lines, Inc.,* 197 F.3d 631, 638 (2d Cir.1999) (suit for declaratory relief concerning insurance coverage was within core jurisdiction because pay-first provision in policies might operate to make creditor distribution inequitable). Having reviewed the Trustee's cases and found them distinguishable, this Court cannot conclude that her causes of action "arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by … state law." *In re U.S. Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997).

Under 28 U.S.C. § 157(c), "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." The Seventh Circuit has articulated a somewhat limited definition of "related to" jurisdiction, holding that "a case is related to a bankruptcy when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re Fed-Pak Systems, Inc.,* 80 F.3d 207, 213–14 (7th Cir.1996). The Court of Appeals has explained that it reads § 157(c) narrowly "not only out of respect for Article III but also to preserve the jurisdiction of state

courts over questions of state law involving persons not parties to the bankruptcy. *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir.1989). Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors." *Id.*

The Court concludes that this adversary proceeding falls within the Bankruptcy Court's "related to" jurisdiction since a judgment in favor of the Trustee would bring assets into the estate, increasing the asset pool available for distribution to creditors in the case. *See Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990); *Almac's,* 202 B.R. at 656.

The discussion of jurisdiction does not end here, however, as Defendants argue that the Trustee lacks standing to bring this suit either in her capacity as successor to the Debtor's causes of action, or as assignee of Samarah's rights with respect to the Phoenix stock.

### Trustee's standing to sue for breach of fiduciary duties owed the Debtor

■ In asserting that the Trustee lacks standing to bring Count I and portions of Count III[4] of her complaint, Defendants point to ¶ 21 of the Trustee's complaint, where she alleges that in or around December 1997, Samarah caused an entity called DeMert & Dougherty, Inc. to transfer all of its assets and liabilities to a shell corporation that changed its name to DeMert & Dougherty, Inc. The transferee corporation is now the Debtor in this

case, and the transferor corporation, now called DeMert Holding Company ("DHC"), is the Debtor's parent.

Importantly, the $100,000 used as earnest money for the Phoenix Transaction was allegedly taken from DHC's bank account in October 1997, before the transfer of assets from DHC to the Debtor. Because the Trustee's complaint contains no allegations that DHC assigned causes of action for breach of fiduciary duty and usurpation of corporate opportunity to the Debtor, Defendants contend that the Trustee lacks standing to bring Count I of the complaint. Defendants make a similar argument with respect to the Trustee's claim in Count III that Schonfeld breached fiduciary duties owed the Debtor when he recommended investment in the Phoenix Transaction. At that point in time, Schonfeld acted as attorney for the entity that now is DHC.

As authority for their position that the Trustee lacks standing, Defendants cite a case where the buyer of the assets of a business brought suit against a former officer of the seller, alleging that the former officer had wasted corporate assets and business opportunities of the assigned business. *Standard Brands, Inc. v. Millard,* 273 F.2d 882 (7th Cir.1960). Significantly, though, at the time of the assignment in *Standard Brands,* neither the assignor nor the assignee had been aware of the alleged cause of action against the former officer. *Id.* at 884. On the former employee's motion to dismiss, the Seventh Circuit affirmed the lower court's ruling that the cause of ac-

---

**4.** Count III combines claims that the Trustee asserts against Schonfeld on behalf of the Debtor with claims that she asserts in her capacity as assignee of Samarah's rights under the Samarah Settlement. First, there are allegations that Schonfeld breached fiduciary duties to the Debtor while acting as the Debt-

or's attorney. Later, the Trustee alleges that while acting as one of Phoenix's directors, Schonfeld breached fiduciary duties owed to Samarah individually. The discussion of standing in this portion of this opinion addresses only the claim the Schonfeld breached fiduciary duties owed the Debtor.

tion had not been included among the assets assigned to the buyer, and that the buyer therefore could not bring suit against the former officer. *Id.* While the decision in *Standard Brands* comments that the buyer had paid no consideration for the cause of action against the former officer, it appears to leave open the possibility that the seller of the business might have been able to bring suit against the officer.

The Trustee responds that the Debtor acquired its assets through a series of intermediate transfers from intermediary companies, all within Samarah's control. She points out that Defendants have cited no cases finding a lack of standing in analogous circumstances, and she argues that substance should control over form.

This Court agrees that the rule in *Standard Brands* is inappropriately applied in the context of intercorporate transfers where the chief executive officer of the transferor is in control of both the transferor and the transferee. Were the holding in *Standard Brands* applied in that context, a corporate officer could avoid liability for wrongdoing through the simple expedient incorporating a new entity and transferring all corporate assets to the new entity, but omitting any cause of action against him from documentation evidencing the transfer.

 The role of a trustee in bankruptcy is to collect money and other assets that may be owing to the debtor. *See Steinberg v. Buczynski,* 40 F.3d 890, 891 (7th Cir.1994). Among those powers, the trustee may bring claims against the debtor's fiduciaries. *See Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) ("rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary

duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition"); *Official Committee of Unsecured Creditors of Toy King Distributors, Inc. v. Liberty Savings Bank, FSB (In re Toy King Distributors, Inc.),* 256 B.R. 1, 167 (Bankr.M.D.Fla. 2000). The inquiry into standing turns on whether the corporation has a claim against the alleged wrongdoer. *See Steinberg,* 40 F.3d at 892.

As applied here, the question of standing will turn on whether the Trustee has causes of action that would support imposition of a constructive trust. That inquiry under Rule 12(b)(6) goes to the merits of her claim of breach of fiduciary duty and usurpation of corporate opportunity, and will be addressed later in this opinion. Since the Trustee will have standing if the Debtor has a legally sufficient claim against Defendants, the Court will not dismiss Count I for lack of jurisdiction.

In Count III the Trustee asserts a cause of action against Schonfeld for breach of fiduciary duty while acting as the Debtor's attorney. The Trustee brings this claim in her capacity as representative of the Debtor's estate. While the Samarah Settlement contains language to the effect that any cause of action related to legal representation of the Debtor was part of the assignment, such a cause of action arguably would have belonged to the Trustee anyway, making an assignment from the Samarah Parties essentially a formality.

 Although Defendants correctly observe that under Illinois law, a party to a lawsuit may not assign a cause of action against its attorney for breach of fiduciary duty, *Wilson v. Coronet Ins. Co.,* 293 Ill. App.3d 992, 689 N.E.2d 1157, 228 Ill.Dec.

736 (1st Dist.1997), the underlying policy consideration is that if such suits could be assigned to strangers to the relationship, an undue burden would be placed on the legal profession and the judicial system. *Id.*, 293 Ill.App.3d at 995, 689 N.E.2d at 1159, 228 Ill.Dec. at 738. The Debtor was not a stranger to the attorney-client relationship with Schonfeld, and Defendants cite no decisions finding that a trustee lacks standing to bring malpractice or other claims against a debtor's former attorney. Because the principle in *Wilson* is not implicated here, that portion of Count III dealing with Schonfeld's alleged breach of fiduciary duty to the Debtor will not be dismissed as improperly assigned to the Trustee.

### Trustee's standing to bring suit as Samarah's assignee for breach of fiduciary duties owed Phoenix shareholders

■ Defendants challenge Counts II through V on the basis that Samarah did not assign his "anti-dilution" claims to the Trustee. In making that argument they ask the Court to refer to that portion of the Samarah Settlement excepting certain causes of action in the Illinois State Court from the assignment to the Trustee. As noted in the preceding summary of background facts, however, there is language in the Samarah Settlement specifically assigning all rights and causes of action for dilution of the Phoenix stock to the Trustee.

Defendants essentially ask the Court to determine on the basis of one of the complaints in the Illinois State Court whether particular causes of action were assigned to the Trustee or retained by Samarah.

Importantly, though, the only pleadings from the Illinois State Court action predate the Samarah Settlement. Since the record from the Illinois State Court suit is incomplete, there are fact issues as to which causes of action were assigned to the Trustee. Because the Trustee may be able to establish that she was assigned Samarah's anti-dilution claims, Counts II through V will not be dismissed for lack of standing.

### Question whether action must be maintained as a derivative suit

In ¶ 66 of her complaint, the Trustee describes that portion of Count II dealing with the initial issuance of stock to S & W and Hollow Brook as a derivative claim. Defendants also characterize the remainder of Count II and Counts III through V as derivative claims, and they argue that the Trustee lacks standing[5] to bring these counts because the Debtor did not own Phoenix stock at the time of the actions of which she complains. In making that argument, Defendants rely on the requirement under Fed. R. Bankr.P. 7023.1 and Fed.R.Civ.P. ("Rule") 23.1 that the complaint in a derivative suit allege "that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." *See also Keever v. Jewelry Mountain Mines, Inc.*, 100 Nev. 576, 688 P.2d 317 (1984); *Gascue v. Saralegui Land & Livestock Co.*, 70 Nev. 83, 255 P.2d 335 (1953). Defendants do not address the question whether other prerequisites to the bringing of a derivative suit, such as the requirement of

---

**5.** The Seventh Circuit has pointed out that it is something of a misnomer to label the question presented as one of "standing." Rather, the inquiry made is whether the action is prosecuted in the name of the "real party in interest." *Id. See* Fed. R. Bankr.P. 7017 (applying Fed.R.Civ.P. 17 in adversary proceedings).

a demand on corporate directors, have been met.

There are actually two questions raised in the briefs: (1) whether the Trustee's causes of action are derivative in nature; and (2) if the counts at issue are derivative in nature, whether the Trustee is a proper plaintiff.

Looking first to the question whether the causes of action in Counts III through V are derivative in nature, each count contains allegations that one of the individual Defendants "violat[ed] his common law duties of care and loyalty owed to all then existing shareholders of Phoenix, including Samarah and his nominee, PCLP." In each of these counts, the wrong complained of is the alleged dilution of Samarah's (or arguably, the Debtor's) percentage ownership interest in Phoenix that took place in February 1999. A portion of Count II also addresses the events of February 1999.

■ A derivative suit consists of two causes of action: one against the directors of a corporation for failing to sue, and a second based upon a right belonging to the corporation. *Mann v. Kemper Financial Cos., Inc.,* 247 Ill.App.3d 966, 974, 618 N.E.2d 317, 323, 187 Ill.Dec. 726, 732 (1st Dist.1993). In a derivative suit, the shareholder derives the power to sue from the unexercised authority of the corporation, and the direct beneficiary of the derivative suit is the corporation that initially possessed the right to bring the suit.

■ The theory underlying the use of derivative suits is that an action for harm to a corporation must be brought in the corporate name. *Frank v. Hadesman and Frank, Inc.,* 83 F.3d 158, 159–60 (7th Cir.1996). Although it would often be more economical to dispense with the requirement of derivative litigation in the context of closely-held corporations, courts generally do not have the discretion to treat derivative injuries as if they were direct injuries to those shareholders who feel that corporate actions have wronged them personally. *See id.* at 161–62.

■ To determine whether a claim is direct or derivative, one must look to the law of the state where corporation is located. *Strougo v. Scudder, Stevens & Clark, Inc.,* 964 F.Supp. 783, 790 (S.D.N.Y.1997). Where the alleged injury falls equally on all of a corporation's shareholders and there is no special relationship between the plaintiff and defendant which might create a duty other than that owed the corporation, the shareholder has no direct cause of action, and the claim is derivative. *Id.* For example, a claim of improper corporate expenditures is a derivative claim belonging to the corporation, as the wrong impacts all shareholders in the same way, through the diminished value of their shares. *See In re Nuveen Fund Litigation,* 855 F.Supp. 950, 954 (N.D.Ill.1994). Generally, too, claims of breach of duty by directors and fiduciaries of a corporation are regarded as derivative rather than direct. *Strougo,* 964 F.Supp. at 790. In contrast, if a complaint alleges a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation, the nature of the claim is individual, rather than derivative. *See, e.g., Spillyards v. Abboud,* 278 Ill.App.3d 663, 671, 662 N.E.2d 1358, 1363, 215 Ill.Dec. 218, 223 (1st Dist.1996).

Defendants allege that Samarah was given the opportunity to purchase one-half of those Phoenix shares issued in February 1999, and they take the position that the Trustee's claims are derivative in nature. *See Nuveen Fund,* 855 F.Supp. at 954 (finding that shareholders had no direct cause of action for dilution of shares where decrease in complaining sharehold-

ers' ownership was caused by their failure to take advantage of their right to purchase new additional stock). With respect to the initial issuance of shares to S & W and Hollow Brook in November 1997, Defendants take the position that a claim of inadequate consideration paid for stock is a derivative cause of action for injury to the corporation. *See, e.g., Spillyards,* 278 Ill.App.3d at 674, 662 N.E.2d at 1365, 215 Ill.Dec. at 225.

Alleging that because of Defendants' secret agreement in February 1999, the proportional change in Samarah's ownership rights did not impact on all Phoenix's shareholders generally, the Trustee takes the position that her causes of action with respect to the dilution of Phoenix shares are not derivative in nature. The Trustee makes no argument that would overcome Defendants' authorities to the effect that the claim based on the initial issuance of shares to S & W and Hollow Brook is derivative in nature.

Whether the causes of action for dilution in Counts II through V are derivative in nature will turn on facts that have as yet not been established. Since, as discussed later, the Trustee may be able to establish that the dilution of Samarah's shares was not the product of voluntary action on his own part, these counts may assert a direct claim for individual injury.

The remaining question bearing on the Trustee's authority to sue is whether she is a proper plaintiff to bring a derivative suit on behalf of Phoenix shareholders. In resisting that proposition, Defendants rely on the fact that at the time of the actions complained of, Samarah, rather than the Trustee or the Debtor, owned the Phoenix stock. Again, Defendants' argument focuses on form, rather than substance.

Although the Samarah Settlement assigned to the Trustee those Phoenix shares "issued to the Samarah Parties," the Trustee alleged in her First Action that those shares belonged to the Debtor. While the Samarah Settlement relieved the Trustee of the burden of establishing that proposition in litigation against Samarah, Defendants cite no authority to the effect that the settlement somehow estops the Trustee from taking the position that the Debtor was the true owner of the shares at the time of the actions giving rise to this litigation. The Court therefore concludes that the Trustee should be regarded as having succeeded to the Samarah shares by operation of law. Hence, the Trustee is a proper party plaintiff within the meaning of Rule 23.1.

Because Defendants have not established that the Trustee lacks authority to bring a derivative suit as a Phoenix shareholder, and because the claims of dilution in Counts II through V may not be derivative claims in any event, these counts will not be dismissed for failure to comply with Rule 23.1.

Summing up, the Court has reviewed Defendants' three arguments bearing on standing. Defendants having failed to establish that the Trustee lacks standing to bring the causes of action in her complaint, this action will not be dismissed for lack of subject matter jurisdiction.

### Abstention

Although this Court has jurisdiction over this action, it may nonetheless abstain. Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Subsection (c) contains the following provisions for permissive and mandatory abstention:

(1) Nothing in this section prevents a district court in the interest of justice, or

in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).

The party seeking abstention has the burden of establishing that abstention is appropriate. *H.J. Rowe, Inc. v. Sea Products, Inc. (In re Talon Holdings, Inc.),* 221 B.R. 214, 221 (Bankr.N.D.Ill. 1998); *Carlson v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois (In re Carlson),* 202 B.R. 946, 949 (Bankr.N.D.Ill.1996). Because federal courts should generally exercise their jurisdiction if properly conferred, abstention is the exception rather than the rule. *Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir. 1993); *S.N.A. Nut Co. v. Haagen–Daz Co. (In re S.N.A. Nut Co.),* 206 B.R. 495, 501 (Bankr.N.D.Ill.1997).

Defendants argue that both mandatory and permissive abstention would apply in this case. Since there can be no exercise of discretion if abstention is required, this decision considers mandatory abstention first.

*Mandatory abstention*

Under 28 U.S.C. § 1334(c)(2), abstention is mandatory where the following criteria are met: (1) the suit is based on a state law cause of action that, although related to a case under title 11, does not arise under title 11 or arise in a case under title 11; (2) there is no separate basis for federal jurisdiction apart from the bankruptcy; (3) an action has already commenced in the state court; and (4) the case could be timely adjudicated in the state court. *Cullen Electric Co. v. Bill Cullen Electrical Contracting Co. (In re Bill Cullen Electrical Contracting Co.),* 160 B.R. 581, 585 (Bankr.N.D.Ill.1993). Since the statute is phrased in the conjunctive, the Court will only be required to abstain if all four requirements are satisfied.

Looking to the first two criteria under § 1334(c)(2), the Trustee's causes of action arise under state law, and absent bankruptcy, the suit would not fall within the jurisdiction of the federal courts. The third factor has not been established, however, even though litigation involving all these parties is pending in the Illinois State Court. As already discussed, the Samarah Settlement excepted certain of his state law causes of action from the assignment to the Trustee, and the Trustee states that she has not been made a party to the litigation in the Illinois State Court. There are questions of fact as to what matters remain pending in the Illinois State Court since the Samarah Settlement. Since the evidence does not establish that the Trustee is a party to parallel litigation in the Illinois State Court, this Court cannot conclude that an action involving the same claims is already commenced in a state court.

The remaining question under § 1334(c)(2) is whether the action could be timely adjudicated in the Illinois State Court. As discussed below, even assuming the Illinois State Court might allow the Trustee to intervene to assert her claims

in Samarah's lawsuits, this element would not be satisfied.

 Where the parties dispute whether an action can be timely adjudicated in a state court, the moving party bears the burden of persuasion. *Georgou v. Fritzshall (In re Georgou)*, 157 B.R. 847, 850–51 (N.D.Ill.1993). Several courts have pointed to the following factors as bearing on the likelihood of timely adjudication: (1) the backlog of the state court's calendar; (2) the status of the bankruptcy proceeding; (3) the complexity of the issues presented; and (4) whether the state court proceeding would prolong the administration of the estate. *Id.* at 851. The underlying concern is whether allowing the state court action to proceed will have unfavorable effects on the pending bankruptcy. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 74 B.R. 651, 655 (N.D.Ill.1987).

As Defendants point out, a number of courts have opined that in cases under Chapter 7 or liquidations under Chapter 11, the likely timeliness of adjudication does not weigh heavily in the determination whether to abstain. *E.g., World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr.S.D.Cal. 1988). As is not the situation in a reorganization, there is no need to implement or fund a plan. *See id.*

When assessing the possibility of delays in the Bankruptcy Court, other decisions have commented that decisions in non-core cases may be delayed due to the fact that absent consent, bankruptcy courts may only enter recommended decisions. *Maryland Casualty Co. v. Aselco, Inc.*, 223 B.R. 217, 221 (D.Kan.1998). *See also Ka-mine/Besicorp Allegany, L.P. v. Rochester Gas & Electric Co. (In re Kamine/Besicorp Allegany, L.P.)*, 214 B.R. 953, 975 (Bankr.D.N.J.1997). If the reference must be withdrawn because of a jury demand, this additional layer of procedure will increase the time for adjudication in the bankruptcy court. *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 779 n. 18 (10th Cir. BAP 1997).

 As applied here, because the Debtor's bankruptcy case has been converted to a liquidation under Chapter 7, a delay in adjudicating this dispute will not have an adverse impact on any plan to reorganize. On the other hand, one cannot assess the possibility of delay in adjudication in the federal court, since it is not known whether Defendants would consent to entry of a final order by the Bankruptcy Court.[6] Also, § 1334(c)(2) requires that there be a pending state court proceeding in favor of which the Court may abstain. This Court cannot conclude that the final factor under § 1334(c)(2) has been satisfied, as Defendants have not established that the Trustee is a party, or that she could be made a party to the litigation in the Illinois State Court. Since not all the requirements under the statute have been met, mandatory abstention is not required.

### *Permissive abstention*

 Under § 1334(c)(1), "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under

---

**6.** Since Defendants have not yet answered the complaint, they are not required to make the statement under Fed. R. Bankr.P. 7012(b) as to whether they consent to entry of final orders or judgment by the bankruptcy judge. Although Defendants need not make that election until they file their answer, this Court will not assume that Defendants would not consent to trial in the Bankruptcy Court, or that they would move to withdraw the reference.

title 11." 28 U.S.C. § 1334(c). Although describing the criteria that would support a discretionary decision to abstain as "somewhat oblique," the Seventh Circuit has compiled the following list of twelve relevant factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d at 1189. "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Id.*

Here, factors 2, 5, 7 and 12 weigh in favor of abstention, since state law issues predominate in this non-core action against non-debtor Defendants. Factor 8 is irrelevant here because there is no need to sever claims in this non-core proceeding. Also, factors 1, 3 and 6 are neutral, since the complaint presents rather straightforward questions under state law, and substantially all the Debtor's assets have already been liquidated. *See Williams v. Stefan*, 133 B.R. 119, 123 (N.D.Ill.1991), *aff'd sub nom. In re L & S Industries, Inc.*, 989 F.2d 929 (7th Cir. 1993) (opining that where bankruptcy case nears closing, claims under state law lose their relatedness to bankruptcy law).

On the other hand, factors 4, 9 and 10 weigh against abstention, as there is no evidence of forum shopping,[7] and this proceeding could be timely adjudicated in the Bankruptcy Court. Most importantly, Defendants have not established that a related proceeding involving the Trustee is pending in the Illinois State Court. Because overall it appears that this matter could be just as efficiently adjudicated in the Bankruptcy Court, and bearing in mind that the Debtor's bankruptcy case has already been pending for three years,

**7.** While not accusing the Trustee of seeking a forum where applicable law is more favorable, Defendants argue that they are in "civil double jeopardy" because the Trustee's choice of forum gives her two chances of gaining control over Phoenix's stock. The reasoning is that even if the Trustee fails here in this cause of action for imposition of a constructive trust, she will still win control over all issued shares of Phoenix stock if Samarah succeeds in his Illinois State Court cause of action for cancellation of the shares.

Defendants' argument presupposes that Samarah continues to pursue cancellation of Defendants' shares in the Illinois State Court. As already stated, however, there is language in the Samarah Settlement assigning all rights and causes of action for dilution of the Phoenix shares to the Trustee. Because the parties have not submitted copies of Illinois State Court pleadings filed since the Samarah Settlement, this Court cannot conclude that the pendency of suits in the two forums gives the Trustee more than one chance of gaining control of Phoenix's stock.

the Court will not exercise its discretion to abstain.

### Transfer of Venue

While not disputing that venue of this action is proper in this District, Defendants seek an order transferring the proceeding to the New Jersey District Court. Defendants move under 28 U.S.C. § 1404(a), the transfer of venue statute which substantially replaced the common law doctrine of *forum non conveniens. In re Joint Eastern & Southern Districts Asbestos Litigation*, 22 F.3d 755, 761 (7th Cir.1994). Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Trustee disagrees that Defendants cite the appropriate authority for transfer of venue. Instead, she maintains that transfer would be under 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Fed. R. Bankr.P. 7087 provides that "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 USC § 1412, except as provided in Rule 7019."

■ Despite their difference of opinion regarding which statute would apply here, the parties agree that the standard under both statutes is the same.[8] The factors for consideration, then, are the convenience of parties and witnesses, and the interest of justice.

■ On a motion for transfer of venue, the party seeking transfer bears the burden of establishing that the requirements for transfer are met. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989). In passing on a motion for transfer, the district judge must consider the statutory factors in light of all the circumstances of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986).

### Convenience of the parties and witnesses

■ Factors bearing on the convenience of parties and witnesses, sometimes termed "private interests" include the following: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the convenience of the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum; (4) the ease of access to sources of proof; and (5) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses. *Kalamazoo Realty Venture Limited Partnership v. Blockbuster Entertainment Corp.*, 249 B.R. 879, 889 (N.D.Ill.2000). Where a request is made to transfer venue of an adversary proceeding, bankruptcy courts may also consider whether the transfer would promote the economic and efficient administration of the estate. *See, e.g., Haworth, Inc. v. Sunarhauserman Ltd.*, 131 B.R. 359 (Bankr.W.D.Mich.1991); *see also Continental Airlines, Inc. v. Chrysler (In*

---

**8.** Although there is no explicit reference to the convenience of witnesses in 28 U.S.C. § 1412, bankruptcy courts considering transfer of venue under § 1412 have considered the convenience of witnesses as a factor in their decisions. *See, e.g., Continental Airlines v. Chrysler (In re Continental Airlines)*, 133

B.R. 585, 587–88 (Bankr.D.Del.1991); *Haworth, Inc. v. Sunarhauserman Ltd.*, 131 B.R. 359, 362 (Bankr.W.D.Mich.1991); *A.R.E. Manufacturing Co., Inc. v. D & M Nameplate, Inc. (In re A.R.E. Manufacturing Co., Inc.)*, 124 B.R. 912, 914 (Bankr.M.D.Fla.1991).

re Continental Airlines, Inc.), 133 B.R. 585, 587 (Bankr.D.Del.1991); A.R.E. Manufacturing Co., Inc. v. D & M Nameplate, Inc. (In re A.R.E. Manufacturing Co., Inc.), 124 B.R. 912, 914 (Bankr.M.D.Fla. 1991). The movant must establish by reference to particular circumstances that the transferee forum is clearly more convenient. Coffey, 796 F.2d at 219–20.

As applied here, several factors are neutral, since material events underlying the parties' dispute occurred both in Illinois and in New Jersey. The convenience of the parties is similarly neutral, as Samarah and the Trustee are located in Illinois, while Defendants are located in New Jersey. Since Defendants have neither named those third parties who might be called as witnesses, nor specified what the substance of third party testimony would be, it cannot be concluded that key witnesses would be unavailable for trial in this District. Phoenix's books and records are located in New Jersey, but they may be transported easily, and Defendants either have or will have to produce copies of documents in this District in connection with the Illinois State Court litigation. Taking these factors into account, Defendants have only established that the transfer would shift the inconvenience of litigation to the Trustee. Such a showing is insufficient to support a transfer of venue. See Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964); Heller Financial, 883 F.2d at 1294.

Looking to other relevant considerations, the Trustee has chosen this forum, and she brings suit on behalf of creditors of the Debtor's estate. Litigation in this District will be more economical for the estate, and Defendants are already represented by local counsel in the Samarah Lawsuits in the Illinois State Court. The Court concludes that private interests weigh against a transfer of venue.

### Interest of justice

■ "Public factors" traditionally considered in the "interest of justice" analysis relate to the efficient administration of the court system. Coffey, 796 F.2d at 220. As an example, the interest of justice may be served where litigants are more likely to receive a speedy trial in a particular forum. Id. By the same token, related litigation should be transferred to a forum where consolidation is feasible. Id. See also Heller Financial, 883 F.2d at 1293. A state's interest in vindicating its laws and policies can be a factor in determining whether a lawsuit should be heard in a court within that state. Jackson v. Venture Dep't Stores, Inc., No. 98 C 6216, 1998 WL 778057 (N.D.Ill. Nov. 3, 1998).

To support this aspect of their venue argument, Defendants emphasize that Phoenix's place of business is located in New Jersey, that they are residents of that state, and that events giving rise to the Trustee's stock dilution claim occurred in New Jersey. Based largely on those facts, they would characterize this dispute as having a close relationship to the community in New Jersey. Because Phoenix is incorporated in Nevada, however, the laws of that state may apply.

Without more, this Court cannot conclude that this dispute between shareholders of a closely held corporation is of particular importance to the citizens of New Jersey. Nor has it been shown that the proceeding will come to trial more promptly in that forum. Most significantly, too, the New Jersey District Court has found in its decision on venue that the litigation pending there is' not parallel to the Samarah Lawsuits. That determination having been made, there would seem to be little likelihood that this proceeding could be consolidated with Phoenix's New Jersey action. The Court therefore concludes

that Defendants have not established that transfer would be in the interest of justice.

Defendants having failed to establish that a transfer would be for the convenience of parties and witnesses or in the interest of justice, their motion to transfer venue is denied.

### Arguments That Count I Fails to State a Cause of Action

Although the Trustee acknowledges in her complaint that she is in possession of all 500 shares of Phoenix stock that were allegedly purchased with the Debtor's funds, she also seeks to recover those other Phoenix shares owned by Defendants. In pursuit of that objective, the Trustee alleges in Count I that Samarah and Schonfeld breached fiduciary duties owed the Debtor when they risked the Debtor's scarce funds and used the Debtor's facilities and other resources in the Phoenix Transaction and in the subsequent operations of Phoenix. The Trustee contends that by reason of Samarah's and Schonfeld's breaches of fiduciary duties, and because the Debtor bore the risks of the Phoenix Transaction, other parties currently owning Phoenix Stock have been unjustly enriched. As a remedy, the Trustee asks that the Court impose a constructive trust on Defendants' Phoenix shares, and that Defendants be ordered to transfer them to her. Defendants make a number of challenges, both legal and factual, to the sufficiency of Count I.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir.1999), *cert. denied*, 528 U.S. 1118,

120 S.Ct. 939, 145 L.Ed.2d 817 (2000). In ruling on the motion, the court accepts as true all facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir.1999). A complaint may not be dismissed under Rule 12(b)(6) unless no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.1999). With the few exceptions noted in the preliminary comments to this opinion, a court generally does not consider materials outside the pleadings in ruling on a motion to dismiss. *E.g., General Electric Capital Corp.*, 128 F.3d at 1080.

Applying those principles, the Court will not address Defendants' argument that the Trustee has failed to allege a cause of action for breach of fiduciary duty because the Debtor declined the opportunity to invest in Phoenix, and instead loaned Samarah the earnest money needed for the Phoenix Transaction. Since this argument depends on Samarah's subsequently-recanted testimony, and other evidentiary materials outside the pleadings, the argument is not properly raised in this motion to dismiss.

Looking to Defendants' legal arguments, they correctly observe that the term "unjust enrichment" is not descriptive of conduct that, standing alone, will justify an action for recovery. *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill.App.3d 483, 492, 648 N.E.2d 971, 977, 208 Ill.Dec. 49, 55 (1st Dist.), *appeal denied*, 163 Ill.2d 547, 657 N.E.2d 615, 212 Ill.Dec. 414 (1995).[9] Rather, it is a condi-

---

**9.** Defendants state that under Illinois choice of law principles, the fiduciary duties of corporate officers and directors are governed by the law of the state of incorporation. Since both the Debtor and Phoenix are Nevada corporations, the law of that state would apply.

tion that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct. *Id.*

 Similarly, the term "constructive trust" describes a remedy, rather than the underlying cause of action. *See Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 710 (7th Cir. 1999), *cert. denied,* 528 U.S. 1136, 120 S.Ct. 979, 145 L.Ed.2d 930 (2000); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 16 F.Supp.2d 941, 952 (N.D.Ill.1998). A constructive trust is a device to prevent unjust enrichment. *American Nat'l Bank and Trust Co. of Rockford, Illinois v. United States,* 832 F.2d 1032, 1035 (7th Cir.1987). If a defendant has unjustly enriched himself by fraud or breach of a fiduciary relationship, a plaintiff may seek redress by a constructive trust. *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.,* 137 Ill.App.3d 84, 90–91, 484 N.E.2d 349, 354, 91 Ill.Dec. 790, 795 (5th Dist.1985), *aff'd,* 114 Ill.2d 278, 499 N.E.2d 1319, 102 Ill.Dec. 306 (1986); *Harris Trust and Savings Bank v. Salomon Brothers, Inc.,* 832 F.Supp. 1169, 1176–77 (N.D.Ill.1993).

 In the context of corporate governance, the remedy for an officer's or director's misappropriation of corporate assets or usurpation of corporate opportunities is restitution compelled by means of a constructive trust. *Forkin v. Cole,* 192 Ill.App.3d 409, 430, 548 N.E.2d 795, 808, 139 Ill.Dec. 410, 423 (4th Dist.1989). Here, the Trustee bases her cause of action on the corporate opportunity doctrine, which prohibits a corporation's fiduciary from misappropriating corporate property and from taking advantage of business op-

portunities belonging to the corporation. *Dremco, Inc. v. South Chapel Hill Gardens, Inc.,* 274 Ill.App.3d 534, 538, 654 N.E.2d 501, 505, 211 Ill.Dec. 39, 43 (1st Dist.), *appeal denied,* 164 Ill.2d 561, 660 N.E.2d 1267, 214 Ill.Dec. 318 (1995). The core principle is that a fiduciary will not be permitted to usurp an opportunity which was developed through the use of corporate assets. *Id.* When a corporation's fiduciary wants to take advantage of a corporate opportunity which is in the corporation's line of business, the fiduciary must first disclose and tender the opportunity to the corporation, notwithstanding the fact that the fiduciary may have believed that the corporation was legally or financially incapable of taking advantage of the opportunity. *Id.,* 274 Ill.App.3d 534, 542, 654 N.E.2d 501, 507, 211 Ill.Dec. 39, 45 (1st Dist.1995).

 Factors considered in determining whether the officer may take advantage of the opportunity include the manner in which the offer was communicated to the officer, the good faith of the officer, the use of corporate assets to acquire the opportunity, the degree of disclosure made to the corporation, the action taken by the corporation with reference thereto, and the need or interest of the corporation in the opportunity. *Lindenhurst Drugs, Inc. v. Becker,* 154 Ill.App.3d 61, 68, 506 N.E.2d 645, 650, 106 Ill.Dec. 845, 850 (2d Dist.1987). Use of a director's position with the corporation to capture an opportunity alone may be enough to establish liability. *Id.,* 154 Ill. App.3d at 70, 506 N.E.2d at 652, 106 Ill. Dec. at 852.

Notwithstanding the potential application of Nevada law, in this section of their discussion, Defendants have relied almost exclusively on Illinois law. The rationale given is that

"Nevada follows corporate law rules 'of wellnigh universal application.'" *See Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 879 (S.D.N.Y.1986).

Defendants make a variety of arguments challenging the underpinnings of the Trustee's claims of usurpation of corporate opportunity, constructive trust and unjust enrichment. First, they observe that the Trustee has alleged that the Debtor was in "dire financial straits." Based on that allegation of insufficient cash on hand, Defendants argue that the Debtor could not have taken advantage of the opportunity to invest in Phoenix. Along that line of thought, Defendants also contend that because the Debtor was a cosmetics manufacturer,[10] the Phoenix Transaction was not reasonably incident to the Debtor's line of business.

■ A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage. *Dremco*, 274 Ill.App.3d at 538, 654 N.E.2d at 505, 211 Ill.Dec. at 43. However, a belief on the part of the fiduciary that the corporation cannot engage in the business opportunity is not a substitute for the fiduciary's duty to present the question to the corporation for the corporation's independent evaluation. *Kerrigan v. Unity Savings Ass'n*, 58 Ill.2d 20, 28, 317 N.E.2d 39, 43, *aff'd in part, rev'd in part on other grounds*, 58 Ill.2d 20, 317 N.E.2d 39 (1974). Also, when a fiduciary uses a corporation's assets to develop a business opportunity, the fiduciary is estopped from denying that the resulting opportunity belongs to the corporation whose assets were misappropriated, even if it was not feasible for the corporation to pursue the opportunity or if the corporation had no expectancy in the project. *Graham v. Mimms*, 111 Ill. App.3d 751, 763, 444 N.E.2d 549, 557, 67 Ill.Dec. 313, 321 (1st Dist.1982). *See also Trim Cut Co., Inc. v. Beasley (In re Trim-Lean Meat Products, Inc.)*, 4 B.R. 243,

246–47 (Bankr.D.Del.1980) (general proscription against corporate officer's misapplication of corporate funds applies to business opportunities outside corporation's line of business).

■ Drawing inferences in favor of the Trustee, the Court concludes that she may be able to prove that Samarah misappropriated corporate funds for the Phoenix Transaction, and that he did not present the opportunity to the Debtor, as was his duty as a director. Were that set of facts established, a breach of duty could be found even if the opportunity were outside the Debtor's line of business.

Defendants also point out that no Defendant was ever a director of the Debtor, and that the Samarah Settlement released Samarah from liability to the Trustee or the Debtor's estate for actions taken in his capacity as corporate officer or director. Because there was no duty running from Defendants to the Debtor, Defendants would conclude that Count I is brought in violation of the principle that some form of wrongdoing is a prerequisite to the imposition of a constructive trust. *Suttles v. Vogel*, 126 Ill.2d 186, 533 N.E.2d 901, 904, 127 Ill.Dec. 819, 822 (1988). *See also Amendola v. Bayer*, 907 F.2d 760, 762 (7th Cir.1990).

■ Count I will not be dismissed on this basis. A third party who has colluded with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom, is under a duty of restitution to the beneficiary. *Village of Wheeling v. Stavros*, 89 Ill.App.3d 450, 454, 411 N.E.2d 1067, 1070, 44 Ill.Dec. 701, 704 (1st Dist. 1980). Although the transaction assailed in a constructive trust is usually one between the parties directly, this is not a prerequisite. A third party who induces a

**10.** The complaint does not include allegations as to the nature of the Debtor's business.

breach of a trustee' duty of loyalty, or participates in such a breach, or knowingly accepts any benefit from such a breach, becomes directly liable to the aggrieved party. *Id.*, 89 Ill.App.3d at 455, 44 Ill.Dec. 701, 411 N.E.2d 1067. *See also Roth v. Carlyle Real Estate Limited Partnership VII*, 129 Ill.App.3d 433, 439, 472 N.E.2d 836, 840, 84 Ill.Dec. 699, 703 (1st Dist. 1984).

As noted in the summary of facts at the beginning of this opinion, the Trustee alleges that while knowing of the Debtor's poor financial condition, Sokoloff and Schonfeld insisted that cash for the Phoenix Transaction come from the Debtor. Sokoloff and Schonfeld also allegedly profited from Samarah's wrongful conduct by accepting Phoenix stock for which they had paid no consideration. Bartkovich and Hollow Brook are alleged to have been accomplices in the plot. Because the Trustee may be able to prove that Defendants colluded in Samarah's breach of duty, Count I will not be dismissed on the basis that only Samarah was the wrongdoer.

■ Finally, Defendants take the position that there has been no unjust enrichment because the Debtor and the Trustee recovered those Phoenix shares allegedly purchased with the Debtor's funds. The principle urged is that where a plaintiff's property was wrongfully or mistakenly conveyed to a defendant by a third party, the plaintiff's recovery is limited to the property conveyed and does not extend to the profits earned as a result of the innocent defendant's use of the property. *L.E. Zannini & Co., Inc. v. Jenkins & Boller Co., Inc.*, 159 Ill.App.3d 227, 229, 512 N.E.2d 89, 91, 111 Ill.Dec. 185, 187 (2d Dist.), *appeal denied*, 117 Ill.2d 545, 517 N.E.2d 1087, 115 Ill.Dec. 401 (1987). Application of the rule prohibiting recovery of profits from a defendant who innocently received property from another is particularly appropriate where those profits resulted from extensive efforts by the defendant. *Id.*

■ On the other hand, rescissionary damages may include the proceeds of stock held in constructive trust. *See, e.g., Estate of Jones by Blume v. Kvamme (Estate of Jones)*, 449 N.W.2d 428 (Minn.1989); *Roth v. Carlyle Real Estate Ltd. Partnership VII*, 129 Ill.App.3d 433, 472 N.E.2d 836, 84 Ill.Dec. 699 (1st Dist.1984). Notably, too, Defendants' argument depends on their own assertion that they committed no wrong. Because the Trustee may be able to prove Defendants' complicity in wrongdoing, she may be able to prove that Defendants have been unjustly enriched.

### Arguments That Count II Fails to State a Cause of Action

■ There are two aspects to the Trustee's request for declaratory judgment in Count II of the complaint. First, she seeks a declaration that Defendants Sokoloff, Schonfeld and Bartkovich violated fiduciary duties owed Phoenix shareholders, most particularly Samarah and PCLP, when they voted to approve the stock offering of 1,000 shares in February 1999. Second, the Trustee seeks a finding that the issuance of Phoenix stock to S & W and Hollow Brook was not supported by adequate or appropriate consideration. As relief, the Trustee would have the Court find that the February 1999 vote to issue additional shares was void, and that the issuance of shares to S & W and Hollow Brook was void and of no effect. The Trustee would also have the Court declare and determine relative shareholder interests in Phoenix.

Defendants argue that the Trustee's claims are legally insufficient. Defendants contend that the Trustee cannot establish that either of the following two corporate

actions was invalid: (1) the February 1999 shareholder rights offering, and (2) the initial issuance of shares to S & W and Hollow Brook in November 1997.

*February 1999 shareholder rights offering*

As the basis for her request that the February 1999 issuance of shares be deemed void, the Trustee cites Nevada law to the effect that actions of interested corporate directors are void, unless approved in good faith by a majority vote sufficient for the purpose of the transaction, without counting the votes of such interested directors. Nev. R. Stat. § 78.140. Because Defendants were all to receive additional shares of Phoenix stock pursuant to the secret agreement that preceded the February 1999 Board of Directors meeting, the Trustee maintains that their self-interest made them ineligible to vote and that the share offering is therefore void.

Defendants contend that the Trustee has misinterpreted Nevada law, and that a transaction between a corporation and its directors is not void if the transaction is fair to the corporation. Because the Trustee has not explicitly alleged that the transaction was unfair to Phoenix, Defendants ask that Count II be dismissed. Defendants further cite a Nevada statute to the effect that shareholder voting agreements are not illegal under the laws of that state. While referring to the two statutes, Defendants cite no case authority interpreting the statutes in circumstances analogous to those alleged in the complaint.

Besides complaining that the Trustee has not alleged the requisite unfairness to Phoenix in her complaint, Defendants make the factual argument that the February 1999 share issuance resolution did not harm Samarah because he was given an opportunity to purchase 50 percent of the new shares. The Trustee responds by arguing that Samarah was not given a realistic amount of time to raise funds for the purchase of 500 additional shares, and she argues that through their secret agreement Defendants would acquire all the newly issued shares.

In defending the sufficiency of a complaint, a plaintiff may argue facts on which it relies to support its claim. The test is whether the plaintiff could prove any facts consistent with the complaint that would entitle it to relief. *See, e.g., Walker v. National Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999).

Earlier in this opinion, this Court determined that the Trustee's cause of action for improper dilution of Samarah's shares may be a direct, rather than a derivative claim. Consequently, the Trustee's failure to allege unfairness to Phoenix should not be fatal to her individual cause of action. Defendants having cited no case authority upholding an unequal share offering, the Court cannot conclude that the Trustee's cause of action arising out of the February 1999 share offering is insufficient as a matter of law.

### Initial issuance of shares to S & W and Hollow Brook

The Trustee alleges in her complaint that shares of Phoenix stock were issued to S & W and Hollow Brook purportedly in exchange for services rendered to the corporation. Alleging that neither entity performed unpaid services for Phoenix either before or after the shares were issued, the Trustee seeks a declaration that the shares were issued for inadequate consideration and that they are therefore void.

In moving to dismiss, Defendants argue that under Nevada law, corporate shares may be issued in exchange for services. Defendants further note that under Nevada law, the judgment of a corporation's board of directors regarding the adequacy

of consideration is conclusive absent fraud in the transaction, and they argue that because the Trustee has not explicitly alleged fraud in the transaction, her claim with respect to the shares must be dismissed.

Defendants' argument on this point would rest on their conclusion from unproven facts outside the complaint that Phoenix's Board of Directors properly approved the issuance of shares for services rendered. Looking solely to the allegations of the complaint, however, the Trustee alleges that S & W and members of Hollow Brook received pledges of $1,500 for 24 months in exchange for services rendered. Drawing inferences in the Trustee's favor, she may be able to prove that Phoenix's directors knew that S & W and Hollow Brook had not earned a right to payment through the issuance of stock. Were such facts proven, the transaction conceivably could be characterized as perpetrating a fraud upon Phoenix.

The next question is whether the Trustee's allegations of fraud conform with applicable pleading rules. The Federal Rules of Civil Procedure do not require that a complaint describe wrongdoing with particularity. *Klug v. Chicago School Reform Bd. of Trustees,* 197 F.3d 853, 859 (7th Cir.1999). However, Fed.R.Civ.P. 9(b) requires the pleading of sufficient facts to notify each defendant of his alleged participation in a fraudulent scheme. *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 725 (7th Cir.1998). Although pleading on information and belief generally will not satisfy Rule 9(b), such allegations are acceptable if necessary facts are solely within the knowledge of the adverse party, and if the plaintiff states the facts on which its allegations are founded. *Refco, Inc. v. Troika Investment, Ltd.,* 702 F.Supp. 684, 688–89 (N.D.Ill.1988).

Here, the Trustee has specifically alleged that S & W and Hollow Brook either performed no services or received cash in payment of any services rendered Phoenix. The information needed to verify whether these allegations are true is solely within Defendants' control, and the Trustee states the basis for her conclusion that issuance of stock was unnecessary to compensate Defendants for any services rendered. Because the Trustee's allegations sufficiently inform Defendants as to the nature of their involvement in the alleged fraudulent scheme, the complaint will not be dismissed for failure to allege fraud with particularity.

### Argument That Counts III Through V Should Be Dismissed for Failure to Allege Intentional Misconduct, Fraud or Knowing Violation of Law

Relying on materials outside the pleadings, Defendants contend the Phoenix's Articles of Incorporation state that except as provided under Nevada law, no director or officer shall be personally liable to the corporation or to any of its shareholders for breach of fiduciary duty. Under the referenced statute, liability can be limited except where the directors' or officers' action involves intentional misconduct, fraud, knowing violation of the law, or unlawful distributions. Defendants argue that because the Trustee has failed to allege intentional misconduct, fraud, or knowing violation of the law, Counts III through V of the complaint should be dismissed.

The federal rules do not require that a plaintiff anticipate affirmative defenses in its complaint. *E.g., Luckett v. Rent–A–Center, Inc.,* 53 F.3d 871, 873 (7th Cir.), *cert. denied,* 516 U.S. 965, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995). Even assuming that in some cases it may be permissi-

ble to dismiss on the basis of a defense, Defendants' argument fails.

The terms "fraud," "intentional misconduct," and "knowing violation of law" are legal conclusions. Drawing inferences in her favor, the Trustee may be able to establish wrongful conduct in connection with the dilution of Samarah's shares. Because Nevada law would not permit Phoenix's articles of incorporation to shield Defendants from liability in such an instance, the complaint will not be dismissed on the basis of the defense urged here.

### Argument That the Complaint Should Be Dismissed Under the Doctrine of Laches

 Defendants also ask that the Court dismiss the Trustee's complaint on the basis that it is barred under the equitable doctrine of laches. Laches is generally available as a defense where a party has knowingly slept on its rights to the detriment of its opponent. *Tarin v. Pellonari*, 253 Ill.App.3d 542, 550, 625 N.E.2d 739, 745, 192 Ill.Dec. 584, 590 (1st Dist. 1993). In order for laches to apply in a case, the party asserting the defense must establish two elements: (1) an unreasonable lack of diligence by the party against whom the defense is asserted; and (2) prejudice arising from the delay. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir.1999). A defendant is prejudiced from delay in asserting a claim where the defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed. *Id.* at 824.

 Although the Trustee has not included allegations as to when she learned

of her cause of action, Defendants argue that the Trustee knew of the events at issue in this suit in February 1999, upon the dilution of Samarah's shares of Phoenix stock. Asserting prejudice caused by the delay of almost two years in bringing suit, Defendants state that in that time interval, they have operated Phoenix and invested $200,000 in the company.

Responding, the Trustee observes that her suit was filed well within the five-year statute of limitations for bringing an action for constructive trust. *Hagney v. Lopeman*, 147 Ill.2d 458, 462, 590 N.E.2d 466, 468, 168 Ill.Dec. 829, 831 (1992).[11] In addition, the Trustee contends that she was not able to bring suit until after the Samarah Settlement in August 2000.

As already noted, the federal rules do not require that a plaintiff anticipate affirmative defenses when pleading its complaint. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Luckett*, 53 F.3d at 873. However, there are cases where a complaint so clearly reveals the existence of a defense that judgment on the pleadings is possible. *International Marketing Ltd. v. Archer-Daniels Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir.1999). One court has stated that laches can be raised on a motion to dismiss if the following conditions are met: (1) an unreasonable delay appears on the face of the complaint; (2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the defect. *Arclar Co. v. Gates*, 17 F.Supp.2d 818, 823 (S.D.Ill.1998).

Applying these principles here, the Trustee's complaint does not clearly reveal

11. Statutes of limitations may be used as measures for determining the length of time that ought to operate as a bar to an equitable cause of action. *Meyers v. Kissner*, 149 Ill.2d 1, 12, 594 N.E.2d 336, 340, 171 Ill.Dec. 484, 488 (1992). However, depending on the cir-

cumstances, equitable relief may be refused although the time fixed by the statute of limitations has not expired. *Id.*, 149 Ill.2d at 12, 594 N.E.2d at 340, 171 Ill.Dec. at 489. Conversely, relief may be granted even though the limitation period has long since elapsed. *Id.*

the existence of a laches defense. Although Defendants complain that they have invested time and money in Phoenix's operation for two years, the amount of time elapsed before the filing of suit is only one factor in the determination as to whether laches applies. Where, as here, suit is brought well within the statute of limitations for an action of this nature, it cannot be summarily determined that delay was unreasonable. Nor is Defendants' bare allegation of investment of time and effort sufficient to establish that they would have acted differently if suit had been brought sooner. Because the existence of a laches defense is not apparent on the fact of the Trustee's complaint, this action will not be dismissed on that basis.

### Argument That Statute of Limitations Bars Claims Against Schonfeld for Breach of Fiduciary Duty While Acting As Debtor's Attorney

Defendants argue that the two-year statute of limitations under Illinois law for legal malpractice suits [12] bars the Trustee's cause of action against Schonfeld for breach of fiduciary duties owed the Debtor. Defendants' reasoning is that the alleged wrong occurred in October 1997, when the Debtor's Board of Directors approved the withdrawal of $100,000 from the Debtor's bank account for use in the Phoenix Transaction. As Defendants view the facts, when Phoenix stock was issued to Schonfeld in November 1997, the Debtor would have known that Schonfeld had recommended the investment while concealing a conflict of interest.

■■■■ Again, Defendants assert a defense that is not apparent on the face of the Trustee's complaint. In Illinois, the Discovery Rule is used to determine the commencement of a statute of limitations.

*McWane, Inc. v. Crow Chicago Industrial, Inc.*, 224 F.3d 582, 585 (7th Cir.2000). Under that rule, the statute begins to run when the plaintiff knows or reasonably should know of its injury and knows that the injury was wrongfully caused. *Id.* When a plaintiff knew or reasonably should have known of an injury and that the injury was wrongfully caused is generally a question of fact. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 250, 633 N.E.2d 627, 631, 198 Ill.Dec. 786, 790 (1994); *Gale v. Williams*, 299 Ill.App.3d 381, 386, 701 N.E.2d 808, 811, 233 Ill.Dec. 743, 746 (3d Dist.1998).

■■■■ Looking to the complaint and drawing inferences in favor of the Trustee, the only representative of the Debtor who would have been in a position to know of Schonfeld's conflict of interest was Samarah. Given Samarah's own alleged breach of duties to the Debtor, it cannot be summarily concluded that notice to Samarah would have given the Debtor of the need to seek redress for injury to it. Because the Trustee may be able to prove facts that would overcome Schonfeld's statute of limitations defense, the Court will not dismiss her claims for breach of fiduciary duty while acting as the Debtor's attorney.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss or, in the alternative, to abstain or transfer venue, is denied in its entirety. Defendants are directed to answer the complaint within 30 days of entry of the order accompanying this opinion. The Court will hold a status hearing in this proceeding on September 25, 2001 at 10:30 a.m.

---

**12.** Alternatively, leaving choice of law issues for a later date, Defendants argue that a three-year limitations period under New York law would apply.