STANDARD BRANDS, INCORPORATED, a Delaware corporation, Plaintiff-Appellant,

v.

Earl F. MILLARD, Defendant-Appellee.

No. 12655.

United States Court of Appeals Seventh Circuit.

Jan. 18, 1960.

Rehearing Denied Feb. 18, 1960.

R. Walston Chubb, St. Louis, Mo., Preston K. Johnson, Jr., Belleville, Ill., Johnson, Johnson, Ducey & Dixon, Belleville, Ill., Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant.

Marvin E. Klitsner, Lyman A. Precourt, Fairchild, Foley & Sammond, Milwaukee, Wis., for appellee.

Before MAJOR, DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal by Standard Brands, Incorporated, plaintiff, from a judgment of the District Court sustaining a motion of Earl F. Millard, defendant, to dismiss a complaint against him filed in a diversity of citizenship case by plaintiff, and dismissing the cause. As alleged in the complaint, plaintiff sued as "assignee of substantially all of the assets of Clinton Foods, Inc. (hereinafter referred to as 'Clinton'), a Delaware

corporation now in dissolution; including all the assets of an unincorporated division of Clinton, known as American Partition Company [1] as a going concern".

The complaint alleges, in some detail, that defendant was a director of Clinton and was chief executive officer of Partition; that he negligently and intentionally failed to carry out his obligations to Partition, resulting in a waste of corporate assets and business opportunities to Partition, and thereby Clinton was damaged.

Plaintiff sues as assignee of Clinton as owner of its cause of action against defendant for such damages.

Attached to the complaint, as Exhibit 1, is a copy of "General Conveyance, Assignment and Transfer" executed and delivered by Clinton (referred to as Grantor) to plaintiff on April 16, 1956, which recites that there was included in assets transferred, *inter alia*: "(g) All * * *, causes of action, judgments, claims and demands of whatever nature relating to Grantor's Corn Products and * * * Partition Businesses * * *."

Exhibit 1 also recites that Clinton " * * * sold, assigned, * * *" to plaintiff

" * * * all of the property and business (*as a going concern*) of every name and nature and wheresoever located, of Grantor's * * * Partition * * * except refunds or claims for refund of State Income and Franchise Taxes and Federal Income and Excess Profits Taxes paid or to be paid by Grantor, including particularly, but without limiting the generality of the foregoing, the following: * * *" (Emphasis supplied.)

Reference is then made *inter alia* to real estate, buildings and improvements thereon, machinery, inventories, other tangible property, trademarks and trade names, trade secrets, patents, etc., cash on hand and in banks, accounts receivable, notes receivable, bills of exchange, drafts and checks in transit relating to Grantor's Corn Products and Partition Divisions; all assignable insurance policies, refunds and rebates recoverable under nonassignable insurance policies, advances, the benefit of all prepaid expenses, deferred charges, causes of action, judgments, claims and demands of whatever nature *relating to* Grantor's Corn Products and Partition *Businesses* except refunds or claims for refund of State Income and Franchise Taxes and Federal Income and Excess Profits Taxes paid or to be paid by Grantor; all Grantor's leases and contracts; all capital stock of Traver Partition Corporation; certain debentures of Minute Maid Corporation; all other property, whether real, personal or mixed *relating to or used in connection with* Grantor's Corn Products and Partition *Businesses*, except refunds or claims for refund of State Income and Franchise Taxes and Federal Income and Excess Profits Taxes paid or to be paid by Grantor.

It appears from the record that "General Conveyance, Assignment and Transfer" was executed pursuant to an agreement for sale dated December 8, 1955, between Clinton, therein called the Seller, and plaintiff, therein called the Buyer.[2]

1. It is conceded by plaintiff's counsel that at the time of the assignment plaintiff knew nothing of the existence of the alleged cause of action of Clinton against defendant attempted to be enforced by plaintiff as an assignee in this case.

---

1. In this opinion, referred to also as Partition.

2. The Seller agreed to sell, assign and convey to the Buyer, *inter alia*, "all of the property and business (as a going concern) of every name and nature and wheresoever located, of Seller's Corn Products and * * * Partition Divisions except" (irrelevant exceptions are then set forth).

The agreement recited that the sale was to include several stated classifications of property in which repeated use was made of language substantially as follows: "relating to or used in connection with Partition Business of Seller".

There is therefore no indication that plaintiff bargained for the purchase of Clinton's assets having this cause of action in mind. Moreover, there is no contention that at that time the officers or directors of Clinton knew of the existence of any such cause of action against the present defendant. A reading of the documents attached to the complaint makes it obvious that there was no intention to assign to plaintiff the alleged cause of action against defendant. If the parties knew of the existence of such a cause of action, their knowledge would have been evidenced in at least one of two ways: first, some suitable general or specific language would have been used to include this cause of action in the documents, and secondly the sale price would have been adjusted in recognition of this additional asset. However, the documents used restrictive language in describing the causes of action being sold. They speak of "all of the property and business (*as a going concern*) * * *"; refer to property "*relating to or used in connection with* Partition *Businesses* of Seller" and to "All assignable insurance policies, refunds and rebates recoverable under nonassignable insurance policies, advances, the benefit of all prepaid expenses, deferred charges, causes of action, judgments, claims and demands of whatever nature relating to Seller's Corn Products and * * * Partition Businesses", etc.

When plaintiff bought the assets of Clinton, including the assets of Partition, it bought the business of a going concern. It considered the value of the assets as it then knew them and it paid a consideration measured by what it knew. The alleged cause of action against defendant was not known by plaintiff and was not purchased by plaintiff. Neither was it known by the seller and, of course, no quoted language in the cited documents shows an intent to assign unknown causes of action. We are convinced that to invest plaintiff with this alleged cause of action against defendant would be a windfall, not contemplated by either party to the contract of sale. The alleged cause of action was never assigned to plaintiff.

2. On March 26, 1959, the District Court entered an order which sustained defendant's motion to dismiss the complaint and dismissed the action.

On April 16, 1959, plaintiff filed a motion for leave to amend his complaint, and tendered a complaint as so amended. It was alleged, as new matter, that on April 6, 1959, as well as on December 8, 1955 and April 16, 1956, the "above causes of action in favor of Clinton and against the defendant" were in existence, and on April 6, *1959*, Clinton

> "* * * now known as C.N.I. Liquidating Co., did confirm the assignment of and did assign to plaintiff the particular cause of action against defendant set forth below, which assignment is also attached as Exhibit 3."

Attached to the proffered amended complaint is also a document, Exhibit 3, purporting to be an assignment executed April 6, 1959 by C.N.I. Liquidating Company (formerly Clinton Foods, Inc.) by Richard M. Moss, its president, assigning to plaintiff herein its causes of action, if any, arising out of the management by Earl Millard, and two other named persons, and evidently referring to the subject matter of this case. This strange document purports to rely as authority for its execution upon paragraph 10 of the agreement of sale dated December 8, 1955, *ante* 3, which provides:

> "Subsequent to the closing, Seller shall make, endorse, execute and deliver to Buyer such checks and credits and such instruments, conveyances, bills of sale, transfers, affirmations, statements, assignments or other documents and shall take such other corporate action, in addition to that contemplated by this Agreement, as shall in the opinion of Counsel for Buyer be necessary or convenient to implement the purchase and sale of properties."

The fallacy of this belatedly contrived effort to resurrect a lost cause was de-

tected by an alert court. The District Court properly disposed of this unusual motion[3] by pointing out that this cause of action was not included within the terms of the sale and assignment as set forth in the agreement (of which paragraph 10 was a part) and, therefore,

"* * * there is nothing that can be implemented by this assignment inasmuch as this chose of action or this cause of action was not included within the terms of the original sale, and not having been included within the terms and conditions of the original sale, there could be no implementation by the assignment. * * *"

For the reasons hereinbefore set forth the judgment of the district court is affirmed.

Affirmed.

---

**3.** It will be noted that the judgment dismissing the action was in effect when this motion was presented.