In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4027

Robert B. Kaplan,

Plaintiff-Appellant,

v.

Shure Brothers, Incorporated,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 982--John F. Grady, Judge.

Argued May 11, 2001--Decided September 4, 2001


  Before Bauer, Diane P.Wood, and Evans,
Circuit Judges.

  Bauer, Circuit Judge.  Robert Kaplan
appeals the district court's award of
summary judgment to defendant Shure
Brothers, Inc. on his contract claim for
breach of warranty. The district court
found as a matter of law that Kaplan
lacked standing to sue on the real estate
contract at issue. We affirm.

BACKGROUND

  On July 14, 1987, Shure entered into a
real estate purchase agreement with RBK
Furniture, Inc. ("RBK"), in which it
agreed to sell to RBK a parcel of land
located at 3635 West Touhy Avenue in
Lincolnwood, Illinois for $2,857,000. In
the contract, Shure made a number of rep
resentations regarding the land,
including a statement that Shure had not
used the property for the production and
storage of any hazardous substances, and
that to Shure's knowledge the land had
never been used as a landfill or a waste
dump. The contract stated that all of
Shure's representations and warranties
would survive the closing and that RBK
would be entitled to money damages in the
event that Shure breached any of its
promises. Moreover, the contract provided
that it was "binding upon and shall inure
to the benefit of the parties hereto and
their respective successors and assigns."

American National Bank and Trust Company of Chicago, Illinois ("ANB") agreed to finance RBK's purchase of the site from Shure. In November of 1987, a Land Trust was created naming ANB as trustee and RBK as sole beneficiary. RBK and ANB executed a note in the principal amount of $2,875,000 payable to ANB, and a first mortgage in favor of ANB. As security for the note, Kaplan executed a personal guarantee and signed an agreement with ANB pledging $575,000 as collateral for any indebtedness and obligations of Kaplan to ANB. When the sale closed on December 2, 1987, Shure conveyed title to the site by warranty deed to ANB as trustee, at the direction of RBK.

In April of 1988, The Fidelity Mutual Life Insurance Company ("Fidelity") agreed to lend the Land Trust $4 million to refinance the ANB loan and to fund the renovation of the site. ANB executed a note in the principal amount of $4 million payable to Fidelity, and a first mortgage in favor of Fidelity. To secure this loan, Kaplan executed a guarantee which provided that he would be liable for 25% of the outstanding principal. In addition, RBK assigned its entire beneficial interest in the Land Trust to Kaplan, and Kaplan accepted the assignment. RBK then provided Fidelity with an estoppel certificate in which RBK represented that it claimed no right or interest in any contract involving the sale of the site. The Trust then leased the land to RBK, which used the site as a retail furniture showroom, warehouse, and office until it ceased operations and voluntarily assigned its assets for the benefit of creditors in 1991. RBK was involuntarily dissolved on July 1, 1995.

After the Trust defaulted on the mortgage and the note, Fidelity filed suit seeking foreclosure and sale of the site, an assignment of rents, and a deficiency judgment against Kaplan. The district court found that Kaplan was liable on the guarantee, and Kaplan paid Fidelity $1,107,238.85 on June 30, 1995 pursuant to a settlement agreement.

Before Fidelity filed its complaint, the Trust entered into an option-to-purchase agreement with Wal-Mart Stores, Inc. ("Wal-Mart"). Wal-Mart conducted an environmental examination of the site and

discovered contamination. Subsequently, Wal-Mart chose not to proceed with the purchase. (The parties dispute whether the discovery of contamination was the impetus for Wal-Mart's decision. Moreover, Kaplan claims that he attempted to sell the property after the Wal-Mart deal collapsed, but that it was unmarketable due to the contamination.) In addition, in December of 1994, Illinois Tool Works ("ITW"), which owned property adjacent to the site, sued RBK and (eventually) Kaplan, claiming that its property was contaminated with hazardous substances released or threatened to be released from land owned by Kaplan and operated by RBK. ITW sought a declaration that Kaplan and RBK were required to clean up the contamination at the site, as well as any contamination migrating to ITW's property, and that they were liable for past and future costs that ITW incurred in addressing the problem. ITW's suit was settled.

In February of 1996, Kaplan brought suit in the Northern District of Illinois asserting a breach of contract claim against Shure, together with other claims not relevant to this appeal. Kaplan asserted that Shure had breached its warranty that contaminating substances were never used at the site. On Shure's motion, the district court dismissed the claim pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice, finding that Kaplan's allegations failed to indicate that he had the authority to bring the contract action against Shure, since he was not a party to the contract between Shure and RBK and he had not adequately pled that he was a third-party beneficiary of that contract. However, the court gave Kaplan leave to re-plead the claim on a third-party beneficiary theory. Kaplan filed a first and second amended complaint, and the defendants again moved to dismiss. The district court granted the defendants' motion with prejudice, rejecting Kaplan's third-party beneficiary arguments and his claim that he was RBK's "successor" under the contract by virtue of RBK's assignment of its beneficial interest in the Land Trust. Kaplan appealed to this Court, and we reversed the dismissal of his claim against Shure, reasoning that his complaint adequately put Shure on notice that Kaplan was claiming to be in privity of contract with RBK, thereby satisfying

the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2).

On remand, the district court decided to address the threshold question of whether there was any evidence that Kaplan had standing to bring his breach of contract action against Shure. The parties provided the district court with a written stipulation of facts relevant to this question. Shure then moved in limine for a ruling that Kaplan was neither an assignee of nor a successor in interest to RBK's rights under the contract, and that Kaplan therefore lacked standing to bring the claim. The district court treated Shure's motion in limine as a motion for partial summary judgment on the issue of standing, and, rejecting Kaplan's arguments, it entered summary judgment against Kaplan for lack of standing. Kaplan moved for reconsideration, arguing that he was not provided with an opportunity to conduct meaningful discovery on the standing issue. In response, the court allowed him to conduct and file additional discovery and to file a supplemental memorandum containing any new evidence that he was able to unearth on the issue. Taking advantage of this opportunity, Kaplan filed an additional memorandum. In support of his motion for reconsideration, Kaplan filed an affidavit stating that he was the majority shareholder and an officer and director of RBK, and that it was RBK's intent, as well as his intent, that the assignment of RBK's entire beneficial interest in the Land Trust to Kaplan include all of the rights and interests that RBK possessed under the real estate sales contract with Shure. As further support for this claim, Kaplan submitted the estoppel certificate that RBK had provided to Fidelity the day after it had assigned its beneficial interest to Kaplan. According to Kaplan, the estoppel certificate (together with Kaplan's personal guarantee) was meant to induce Fidelity to provide a $4 million loan to the Trust. The estoppel certificate concerned the lease agreement in effect at the time between RBK and ANB, and in it RBK (as Lessee) stated:

The Lease represents the entire agreement between the parties thereto as to the leased premises, and Lessee neither has nor claims any right or interest in or

under any contract, option or agreement involving the sale or transfer of the leased premises.

Upon reviewing all of this evidence, the district court found no triable issue as to whether there was an assignment to Kaplan of RBK's rights under the contract with Shure, and, accordingly, entered a final judgment dismissing Kaplan's claim for lack of standing. Kaplan appealed.

DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all facts and drawing all reasonable inferences in the non-moving party's favor. Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, see White Hen Pantry, Inc. v. Cha, 214 Ill. App. 3d 627, 574 N.E.2d 104, 109 (1st Dist. 1991), or by an intended third-party beneficiary of the contract, see Altevogt v. Brinkoetter, 85 Ill.2d 44, 52-55, 421 N.E.2d 182, 186-87 (Ill. 1981). Privity of contract has been defined as "mutual or successive relationship to the same rights of property." See Collins Co., LTD. v. Carboline Co., 125 Ill.2d 498, 511, 532 N.E.2d 834, 839 (Ill. 1988) (emphasis added) (citations omitted). Such a relationship may arise by operation of law, by descent, or by voluntary or involuntary transfer. See id. Privity accompanies the valid assign ment of rights under a contract because it puts the assignee in the shoes of the assignor--"because the assignor was in privity with the opposite contracting party, so is the assignee." See Collins, 125 Ill.2d at 512, 532 N.E.2d at 839-40.

Kaplan contends that the district court erred in determining that he was not in privity with Shure, and argues that he attained such privity as mater of law by accepting RBK's assignment of its entire beneficial interest in the Land Trust, which (he claims) included RBK's rights in the real estate contract with Shure. Moreover, Kaplan argues that in

interpreting the assignment agreement and in determining its scope, a court must ascertain the intent of the parties to the assignment, and in doing so must consider not just the language of the assignment but also the "surrounding circumstances." He argues that the district court improperly restricted its inquiry to the language of the assignment, and neglected to consider other evidence demonstrating that the parties intended for the assignment to include RBK's contract rights (namely, Kaplan's affidavit, wherein he states that both he and RBK intended the assignment to include RBK's contract rights, and the estoppel certificate that RBK provided to Fidelity immediately after the assignment, wherein RBK stated that it had no claim in any contract involving the sale or transfer of the site). Kaplan asserts that the available evidence demonstrates that he has standing to sue Shure on the real estate contract as a matter of law, or in the alternative, that the issue of whether the assignment included RBK's contract rights was at the very least a question of fact which the district court improperly resolved on summary judgment.

We disagree. First, Kaplan's argument that RBK's assignment of its entire beneficial interest in the Land Trust to Kaplan gave him standing as a matter of law to sue on the real estate contract between RBK and Shure finds no support in Illinois law. Kaplan does not claim that he was either a party to or an intended third-party beneficiary of the original real estate contract between RBK and Shure. Rather, he claims that he came into privity with RBK and attained standing to enforce the real estate agreement against Shure when RBK assigned to him its entire beneficial interest in the Land Trust. In support of this theory, Kaplan points to paragraph 9B of the sales contract, which provides that the warranties and representations regarding the quality of the land were remade at closing and survived the closing (thus were not merged with the deed), and to paragraph 28, which provides that the contractual warranties "shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns." However, Kaplan has stipulated that he was not the corporate successor to RBK,

and it is difficult to see how he could otherwise succeed to RBK's rights in the contract unless those rights had been expressly and validly transferred to him by some instrument. Kaplan asserts that the assignment was that instrument, but neither the assignment itself nor the Land Trust Agreement to which it refers mentions anything about RBK's rights in the real estate contract. Moreover, Kaplan does not allege that the trustee (ANB) ever received RBK's contract rights at any time,/1 so Kaplan's power as the assignee beneficial interest holder to direct the trustee in dealing with Trust property would not seem to include the power to enforce the real estate agreement against Shure. In short, Kaplan has not established that RBK transferred its contract rights either to the Trust or to Kaplan, and his conclusory assertion that RBK's assignment of its beneficial interest in the Land Trust by itself accomplished such a transfer is contrary to Illinois law. See Carlyle v. Jaskiewicz, 124 Ill. App. 3d 487, 499-500, 464 N.E.2d 751, 760 (1st Dist. 1984) (holding that a mother's assignment of a 50% beneficial interest in a land trust to her son did not operate as an assignment of the benefits due her under a contract with her daughter or as an assignment of her cause of action against her daughter for breach of contract). Cf. Standard Brands, Inc. v. Millard, 273 F.2d 882, 883-84 (7th Cir. 1960). Finally, Kaplan merely begs the question when he relies on paragraph 28's provision that the contract warranties shall inure to the benefit of the parties "assigns," because this language clearly contemplates the assignment of the contract, and the very question at issue is whether RBK's assignment of its beneficial interest in the Land Trust functioned also as an assignment of its contract rights. Therefore, paragraph 9B's language regarding the rights of the parties' assigns cannot serve as evidence of the legal effect of the later assignment.

Kaplan asserts that under an Illinois land trust, the holder of the beneficial interest enjoys all aspects of ownership of the real estate except title, see Cagan v. Intervest Midwest Real Estate Corp., 774 F. Supp. 1089, 1094 (N.D. Ill. 1991), and therefore that the transfer of the entire beneficial interest in a land

trust is indistinguishable in substantive terms from a sale of the property itself. See Oak Trust Sav. Bank v. Chicago Title & Trust Co., 129 Ill. App. 3d 250, 252, 472 N.E.2d 497, 498 (3d Dist 1984). It is not clear that this aids his argument. Kaplan points to no Illinois authority-- nor have we found any--for the proposition that the sale of real estate transfers from vendor to purchaser the vendor's rights in an earlier real estate contract involving the property, when the purchaser was neither a party to the original contract, in privity with such a party, or an intended third-party beneficiary of the original contract.

In addition, we reject Kaplan's argument that factual evidence extrinsic to the language of the assignment demonstrates that both he and RBK intended for the assignment to include RBK's contract rights. As an initial matter, it is not entirely clear that it is proper under Illinois law for us to consider Kaplan's affidavit or the estoppel certificate in construing the assignment. We have previously held (while applying Illinois law) that assignments are to be interpreted just like any other contract, see Lowrance v. Hacker, 888 F.2d 49, 51 (7th Cir. 1989), and ordinary contract principles counsel against looking beyond the language of the assignment under the circumstances presented in this case. In construing the provisions of a contract "the court's primary objective is to give effect to the intent of the parties at the time the contract was made." Owens v. McDermott, Will & Emery, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (1st Dist. 2000). However, if the contract language is clear and unambiguous, the parties' intent must be ascertained exclusively from the plain language of the contract as a matter of law. See Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 462, 706 N.E.2d 882, 884 (Ill. 1999); Owens, 316 Ill. App. 3d at 344, 736 N.E.2d at 150. If a contract is unambiguous, "any particular interpretation that one of the parties may have had at the time the contract was executed is immaterial," and in interpreting the contract the court will not consider any claimed undisclosed intent on the part of one of the parties drafting the contract. American Nat'l Trust Co. of Chicago v. Kentucky Fried Chicken of S. Cal., Inc., 308 Ill. App.

3d 106, 119, 719 N.E.2d 201, 211 (1st Dist. 1999). So, while Kaplan points to his affidavit and to the estoppel certificate as evidence that both he and RBK intended the assignment to include RBK's rights under the real estate contract with Shure, according to general principles of contract construction we may not consider this evidence unless we find the written assignment to be ambiguous.

Whether a contract is clear or ambiguous is a question of law. See Frydman v. Horn Eye Center, LTD., 286 Ill. App. 3d 853, 858, 676 N.E.2d 1355, 1359 (1st Dist. 1997). Courts will not find ambiguity in contractual language where none exists, see In re Estate of Powless, 315 Ill. App. 3d 859, 864, 734 N.E.2d 111, 116 (5th Dist. 2000), and contract language will only be found ambiguous when it is reasonably susceptible to different constructions, not merely when the parties disagree as to its proper construction or application. See Allied Asphalt Paving Co. v. Village of Hillside, 314 Ill. App. 3d 138, 144, 731 N.E.2d 425, 429 (1st Dist. 2000); Spectramed Inc. v. Gould Inc., 304 Ill. App. 3d 762, 771, 710 N.E.2d 1, 7 (1st Dist. 1998). Applying these principles and limiting ourselves to the language of the written assignment, we find no ambiguity. The assignment states:

For value received, Assignor hereby sells, assigns, transfers, and sets over unto Robert Kaplan all (100%) undivided interest including the power of direction in, to and under that certain Trust Agreement, dated the 20th day of November, A.D. 1987, and known as Trust Number 067952-07 of AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee.

Under the section entitled "(ACCEPTANCE)," Kaplan provided his signature under the phrase, "I, the undersigned, being the assignee [ ] above mentioned, hereby accept the foregoing assignment subject to all of the terms and provisions of said Trust Agreement." Nowhere does the document purport to assign RBK's rights in the real estate contract with Shure, and nothing in the language of the assignment manifests an intention to assign anything other than ANB's interests and powers under the Land

Trust Agreement. Those interests and powers, in turn, are clearly set out in the first paragraph of the Trust Agreement, which provides:

It is understood and agreed between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate, and that such right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such; . . . and that no beneficiary now has, and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid.

Clearly, the rights and powers that ANB possessed as the sole beneficiary of the Land Trust as defined by the Trust Agreement (which was all that it assigned to Kaplan by the unambiguous terms of the assignment), did not expressly include its rights under the real estate contract. Therefore, we find the language of the assignment unambiguous as a matter of law.

Ordinarily, such a conclusion would end the matter, and would preclude us from considering any extrinsic evidence in a further effort to construe the contract. However, Illinois courts have at times departed from this rigid rule and have more liberally availed themselves of extrinsic evidence when construing assignments, as opposed to other types of contracts. See Service Adjustment Co., Inc. v. Underwriters at Lloyd's London, 205 Ill. App. 3d 329, 334, 562 N.E.2d 1046, 1049 (1st Dist. 1990) (ruling that "[t]he creation and existence of an assignment is determined according to the intention of the parties and that intention is a question of fact derived from the instruments executed as well as the surrounding circumstances"); Heritage Bank of Bolingbrook v. Recreational

Retail Builders, Inc., 97 Ill. App. 3d 748, 752-53, 423 N.E.2d 573, 576-77 (3d Dist. 1981) (looking to extrinsic evidence of the surrounding circumstances to determine the parties' intent and the scope of the assignment). Also, Illinois courts have held that the parol evidence rule only applies to the parties to the written agreement, and that ". . . parol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto . . . even where the evidence is offered by the party to the contract." Quality Lightning, Inc. v. Benjamin, 227 Ill. App. 3d 880, 887, 592 N.E.2d 377, 382 (1st Dist. 1992) (citation and quotation omitted); see also In re Vic Supply Co., Inc. v. Bank One Illinois, N.A., 227 F.3d 928, 933 (7th Cir. 2000). One of the parties to the controversy before us (Shure) is a stranger to the assignment at issue. Finally, in our previous panel opinion in this case, we tacitly assumed that Kaplan could rely on extrinsic evidence in attempting to prove his claim when we declined to dismiss his claim as a matter of law. Therefore, we will consider the extrinsic evidence offered by Kaplan, despite the absence of an ambiguity in the assignment.

Unfortunately for Kaplan, this does not alter our conclusion regarding the scope of the assignment. The estoppel certificate merely establishes that, in order to induce Fidelity to provide a loan to Kaplan, RBK renounced all of its rights or interests in the real estate contract with Shure. It does not, either by its terms or by implication, transfer such rights and interests to Kaplan or suggest that Kaplan already held RBK's former rights in the contract by virtue of the prior assignment. In short, the fact that RBK relinquished its rights in the contract does not imply either that it assigned its contract rights to Kaplan or that it intended to do so. Indeed, as the district court noted, it seems somewhat implausible that Kaplan and RBK would have been thinking about Shure's obligations under the real estate contract at the time that the assignment and the estoppel certificate were drafted in 1988, given that the contamination of the site was not discovered until 1992. Moreover, if they did intend Kaplan to receive RBK's contract rights, it seems

reasonable to expect that they would have affirmatively manifested their intention in some way (even if not in the assignment itself). In any event, without some positive indication that Kaplan and RBK intended Kaplan to succeed to RBK's rights in the real estate contract, we cannot grant Kaplan the relief he seeks. The mere negative implication that Kaplan draws from RBK's renunciation of its contract rights in the estoppel certificate is not enough to raise a genuine fact issue on the matter. Aside from Kaplan's self-serving affidavit, the record is devoid of any facts which would warrant the inference that Kaplan and RBK intended the assignment to include RBK's contract rights under the real estate agreement with Shure. Accordingly, there is no genuine issue of fact on the matter, and Shure is entitled to summary judgment.

One final point bears mentioning. In contending that he is in privity of contract with RBK by virtue of the assignment, Kaplan relies on certain language in our previous opinion in this case. In that opinion, we stated:

Kaplan alleges that RBK assigned its whole interest in the Trust to him; this assignment would seem to have included RBK's rights in the land purchase agreement. Additionally, as beneficiary of the Trust, Kaplan may well have succeeded to RBK's rights in the agreement by virtue of the flow-through nature of the Trust. The dismissal of his claims at this stage of the litigation was erroneous.

Kaplan v. Shure Bros., Inc., 153 F.3d 413, 419 (7th Cir. 1998).

Kaplan reads this passage as an endorsement of his argument that the assignment of RBK's beneficial interest could, by itself, effect the transfer of RBK's contract rights. However, when read in its proper context, the passage is of little help to Kaplan. First, we made the above statements in deciding Shure's motion to dismiss Kaplan's claim under Fed. R. Civ. P. 12(b)(6), and we held merely that Kaplan's complaint put Shure on sufficient notice of Kaplan's claim to be in privity with RBK to survive a motion to dismiss. At the time of our decision, no evidence had been submitted

on the issue of standing. While we acknowledged that Kaplan's "allegations with respect to privity [were] relatively thin," we concluded that "we cannot say at this time that Kaplan could prove no set of facts consistent with his allegations which would entitle him to relief." Id. Citing the liberal notice-pleading standards of Fed. R. Civ. P. 8(a)(2), we found that the district court erred in suggesting that Kaplan needed to plead facts showing that he was in privity with RBK in order to forestall the dismissal of his claim. We concluded that Kaplan's claim survived a motion to dismiss because it put Shure on notice that Kaplan was claiming to be in privity of contract with RBK, and that dismissal at that stage of the litigation would have been inappropriate. Seen against this background, the passage quoted above stands for the proposition that Kaplan's claims regarding privity could not be dismissed at the pleadings stage as a matter of law; it does not convey the much stronger proposition that the assignment put Kaplan in privity of contract with RBK as a matter of law (or that Kaplan need not produce any factual proof other than the assignment itself in order to survive a motion for summary judgment on the issue of standing). Moreover, while our speculation that the assignment might have included RBK's contract rights and that Kaplan might have succeeded RBK's rights in the real estate contract "by virtue of the flow-through nature of the Trust" gave Kaplan an opportunity to prove either of these things by producing evidence, it did not decide either issue in his favor. Kaplan has failed to produce evidence that RBK assigned its contract rights either to Kaplan or to the trustee sufficient to raise a genuine issue on the question of standing. Overwhelmingly, the evidence suggests that the Land Trust contained only the real property (and not the real estate contract rights), and that the assignment transferred only the rights under the Trust Agreement. Therefore, Kaplan cannot successfully argue that any rights to the real estate contract "flowed through" the Trust to him as the beneficial interest holder.

AFFIRMED.

FOOTNOTE

/1 Kaplan has not claimed that RBK ever assigned its rights in the real estate contract to the trustee. In addition, he concedes in his brief that Shure's contractual warranties and representations to RBK were not implied in the warranty deed from Shure to the Land Trust. Therefore, Shure cannot claim that the land trustee received Shure's warranties with conveyance of the deed, nor by any other means.