In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1651

NORTHBOUND GROUP, INC.,

*Plaintiff-Appellant*.

*v.*

NORVAX, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 6131 — **Sidney I. Schenkier**, *Magistrate Judge*.

ARGUED OCTOBER 30, 2014 — DECIDED JULY 28, 2015

Before WILLIAMS, TINDER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Northbound Group, Inc. sued several defendants on claims arising from the sale of its business to defendants. The district court dismissed some claims and later granted summary judgment for defendants on the remainder. Northbound appeals, arguing only that its breach of contract claim against Norvax, Inc. should have survived summary judgment. The district court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction on appeal under 28 U.S.C. § 1291. We af-

firm because Norvax was not actually a party to the contract that was allegedly breached, nor is there any basis for holding Norvax liable for any breach by a subsidiary.

Plaintiff Northbound Group, Inc. generates and sells life insurance leads. "Leadbot" is the brand name that Northbound gave this business. Northbound began developing the Leadbot brand in the late 1990s. It had some success, but during troubled economic times a decade later, Northbound eventually found itself out of cash with a frozen line of credit and revenue that did not support its overhead.

Defendant Norvax, Inc. generates and sells health insurance leads. In the course of commercial dealings between Northbound and Norvax, the parties discussed the idea of having Norvax expand into the life insurance leads market by acquiring Northbound. As 2008 turned to 2009, Northbound grew eager to close this transaction lest it have to cease operations entirely. An asset purchase agreement was executed in February 2009.

The asset purchase agreement was "by and between" Northbound and Leadbot LLC, which is a subsidiary of Norvax that was formed to purchase the assets of Northbound. Under the agreement, Leadbot LLC was obligated to use the assets it acquired from Northbound in furtherance of the Leadbot brand. The purchase price was not paid in cash. Instead Northbound would receive an "earn-out" calculated as a percentage of the monthly net revenue of Leadbot LLC. The agreement also contained an Illinois choice-of-law clause.

Northbound claims that Leadbot LLC and Norvax violated the asset purchase agreement in various ways that dam-

aged Northbound. The details are not important here because this dispute turns on a more fundamental question of who was bound by the asset purchase agreement. We review that legal question, and the district court's grant of summary judgment more generally, *de novo. Wisconsin v. Ho-Chunk Nation*, 784 F.3d 1076, 1079 (7th Cir. 2015).[1]

In briefing Northbound directed its arguments against Norvax, and in oral argument Northbound confirmed that it is not seeking a judgment against Leadbot LLC. According to Northbound, Leadbot LLC has no assets. Northbound is seeking a judgment against only Norvax for breach of the asset purchase agreement. The problem for Northbound is that Norvax was not a party to that contract.

The core principle of corporate law is that a corporation is a distinct legal entity, separate from its shareholders, directors, officers, and affiliated corporations, so that the obligations of a corporation are not shared by affiliates, officers, directors, or shareholders. *Main Bank of Chicago v. Baker*, 427

---

[1] One detail of the district court proceedings deserves mention, however. As part of the summary judgment briefing on damages, the defendants filed a motion to strike portions of Northbound's damages evidence. The district court granted that motion in part, but only after ordering Northbound *not to respond to the motion*. While a court may summarily *deny* a motion without hearing from the non-moving party, summarily *granting* a motion without hearing from the non-moving party is a different matter. The record does not indicate why the district court took this unusual and troubling step, which raises basic issues of fairness and due process. The district court's apparent procedural error was harmless, though. Northbound's damages evidence would be relevant only if Northbound could show that its breach of contract claim should have survived summary judgment, which it has not done.

N.E.2d 94, 101 (Ill. 1981); *Van Dorn Co. v. Future Chemical & Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985) (Illinois law).

"It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); see also *Phillips v. WellPoint Inc.*, No. 10-CV-00357-JPG, 2012 WL 6111405, at *9 (S.D. Ill. Dec. 10, 2012) ("As a basic principle of contract law, a non-party cannot be held liable for a breach of contract."), citing *Credit General Ins. Co. v. Midwest Indemnity Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996); *Ransom v. Glossop*, 92 Ill. App. 476, 477 (Ill. App. 1900) ("If appellant is entitled to damages for breach of contract, he can not recover them in a suit against appellee because appellee was not a party to the contract.").

These are the general rules of corporate and contract law, but they come with exceptions, of course. Northbound tries to create one new exception and invokes two established ones. We find no basis for holding Norvax liable for any alleged breach of the contract between Northbound and Leadbot LLC, the Norvax subsidiary.

First, the attempt at creating a new exception: Northbound argues that it may bring a breach of contract claim against Norvax simply because Norvax was in privity of contract with Leadbot LLC and Leadbot LLC was party to a contract with Northbound. In support of this novel proposition Northbound cites *Kaplan v. Shure Brothers, Inc.*, 266 F.3d 598, 602 (7th Cir. 2001). *Kaplan* addressed the question of who might sue for breach, not who might be sued for breach. We held there that a non-party to a contract was barred from suing for breach of that contract because he had not shown that a contracting party had assigned its rights under the contract to him. We wrote: "Under Illinois law, a

cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract." *Id.* at 602 (citations omitted). That rather vanilla statement of contract law cannot be read to authorize a party to a contract to *sue a non-party* for breach of the contract simply because the non-party has a close relationship with the other party to the contract who has breached. We decline to read this innocuous statement from *Kaplan* so expansively that it upsets the foundations of contract and corporate law.

Northbound also tries to invoke two recognized doctrines under which one company can be held liable for another company's obligations. The first is called "direct participant liability." The Illinois doctrine of direct participant liability provides that a parent company may be liable for the alleged wrong of its subsidiary when the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management." *Phillips*, 2012 WL 6111405, at *9, quoting *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 235 (Ill. 2007) (recognizing doctrine in negligence case). The *Forsythe* case relied on a United States Supreme Court case that applied the doctrine to hold that a parent could be liable in tort for pollution if it participated directly in the wrongdoing, see *United States v. Bestfoods*, 524 U.S. 51, 61–63 (1998), which in turn relied on a law review article co-authored by the future Justice Douglas, William O. Douglas & Carrol M. Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929). See also *Graham v. Bostrom Seating, Inc.*, 921 N.E.2d 1222, 1232 (Ill. App. 2010) (applying doctrine to products liability case); see generally *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 770 F.2d 98, 103 (7th Cir. 1985) (applying Illinois law: if corporate officer personally

engaged in conversion, he could be held personally liable and could not be protected by role as corporate agent).

The problem is that Illinois courts have applied this theory of direct participation to torts or violations of statute, not to breaches of contract. *Phillips*, the case that Northbound cites for this theory, held that "the direct participant doctrine does not authorize the imposition of liability for breach of contract," *Phillips*, 2012 WL 6111405, at *11, and that limit is consistent with the broader range of case law, including the cases just cited. The only claim that Northbound pursues on appeal is one for breach of contract. As a federal court, we will not revise Illinois doctrine to extend direct participant liability to breaches of contracts, where parties may choose which individuals or companies will be bound. Northbound cannot hold Norvax liable for a breach of contract by Leadbot LLC under the direct participant liability theory. See *Phillips*, at *11 ("The Court will leave it to the Illinois state courts to determine whether liability under the direct participant liability theory should be expanded to breach of contract claims."); accord, e.g., *Boston Fish Market, Inc. v. EMS-USA Insulated Doors, Inc.*, No. 12-C-6751, 2013 WL 2421744, at *2–4 (N.D. Ill. June 3, 2013) (declining to extend direct participant liability doctrine from tort cases to contract cases until Illinois state courts do so).

The second doctrine that Northbound tries to invoke to hold Norvax liable for alleged breaches by Leadbot LLC is the alter ego doctrine. Under Illinois law: "Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must fur-

ther appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Main Bank*, 427 N.E.2d at 101. Northbound argues that Leadbot LLC is an alter ego of Norvax.

In support of its alter ego theory, Northbound cites deposition testimony from the CEO of Norvax that Leadbot LLC was a brand under the Norvax umbrella. Northbound also cites affidavits attesting that Norvax paid the purchase price for Leadbot LLC's acquisition of Northbound's assets and for the salaries of Leadbot LLC employees. And Northbound says that Norvax assumed certain obligations under the asset purchase agreement.[2]

These facts may show that Leadbot LLC was a "mere instrumentality" of Norvax, the first element of an alter ego theory. Northbound offers no evidence, however, that respecting the separate corporate existence of Norvax would "sanction a fraud or promote injustice," which is the second necessary condition for piercing the corporate veil under Il-

---

[2] Assumption is another established doctrine under which a contract can be enforced against a non-party. See *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"), quoting 21 R. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001). But outside of a conclusory mention in the alter ego section of its principal brief, Northbound hardly mentions the word "assumption," much less develops an assumption argument. If Northbound thought it made an assumption argument, then that "argument is perfunctory and undeveloped, and is therefore waived." *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008).

linois law. This showing is especially difficult for a party to make in a breach of contract action where "courts should apply even more stringent standards to determine when to pierce the corporate veil than they would in tort cases." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill. App. 2007), citing 1 W. Fletcher, Cyclopedia of Corporations § 41.85, at 692 (1999).

In this respect, Illinois law aligns with the broadly recognized corporate law principle that "it is a lot harder to hold investors personally liable in contract disputes than for tort judgments." *Secon Service System, Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 413 (7th Cir. 1988). As we explained in *Secon Service*:

> The reason is simple: contract creditors have entered into a voluntary arrangement with the corporation, which gave them an opportunity to negotiate terms reflecting any enhanced risk to which doing business with an entity enjoying limited liability exposed them. If they wanted guarantees from the investors, they could have negotiated for them. Tort creditors had no chance to obtain compensation ex ante for exposure to increased risk, so to cut off all liability might encourage excessively risky behavior.

*Id*. at 413–14.

Northbound did not argue its alter ego theory in the district court, and in this court its briefing on the theory leaves much to be desired. We could certainly deem it waived, but

as we just explained it is meritless. Our rejection of this theory is not an artifact of the way this case has been litigated.

Northbound argues that it was misled by the district court's decision on defendants' motion to dismiss. In response to Norvax's argument that it was not a party to the asset purchase agreement, the district court said that Northbound's allegations in paragraphs 13 and 14 of the complaint were sufficient to allege that Norvax was in privity of contract with Leadbot LLC, and thus that Northbound could proceed against Norvax for breach of contract. *Northbound Group, Inc. v. Norvax, Inc.*, No. 11-C-6131, 2012 WL 394336, at *7 (N.D. Ill. Feb. 6, 2012), citing *Kaplan v. Shure Brothers, Inc.*, 266 F.3d 598, 602 (7th Cir. 2001). On defendants' motion for summary judgment, however, the district court found that Northbound had offered no evidence that would support a finding that Norvax is liable for breach of a contract to which it was not a party. *Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 972–73 (N.D. Ill. 2013).

Northbound complains that if it had known the district court would require it to prove more than privity of contract between Norvax and Leadbot LLC at summary judgment, then it would have made an alter ego argument to the district court, and it asks us to remand so that it may have a second opportunity to develop evidence to support the theory. We are not persuaded.

Three circumstances combine to convince us that no such remand is necessary. First, we have allowed Northbound to make a new argument on appeal—the alter ego argument— and we have considered that argument. Second, Northbound says in its principal brief that there is "ample evidence" in the record supporting its alter ego argument, yet

Northbound fails to address or even acknowledge the second prong of the alter ego doctrine, the need to prevent fraud or injustice. Third, Northbound offers no details about what evidence it might reasonably expect to present on remand to support its alter ego argument. Under these circumstances, and despite its perfunctory assertion otherwise, we are confident that Northbound was not deprived of a fair opportunity to be heard on any theory it might have offered to hold Norvax liable for Leadbot LLC's alleged breaches of contract.

At the summary judgment stage, with a number of other issues pared away, the district court appears to have focused more on the startling nature of Northbound's effort to pierce the corporate veil based only on Norvax's privity of contract with Leadbot LLC, and the court correctly rejected that theory. Northbound suggests that this was contrary to the "law of the case," but we disagree. If a district court makes what is arguably a mistake of law in allowing a plaintiff to pursue a claim at an early stage of the case, the plaintiff is not entitled to assume that the district court or especially this court will follow that same view of the law when the arguable mistake is pointed out by the other side. The district court properly granted summary judgment in favor of Norvax on the claim for breach of contract.[3]

---

[3] Northbound also argues that Norvax breached the covenant of good faith and fair dealing, which is "not an independent source of duties for the parties to a contract." See *Lansing v. Carroll*, 868 F. Supp. 2d 753, 761 (N.D. Ill. 2012), quoting *Seip v. Rogers Raw Materials Fund, L.P.*, 948 N.E.2d 628, 637 (Ill. App. 2011). Under Illinois law, the covenant is "used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Fox v. Heimann*, 872 N.E.2d 126, 134 (Ill. App. 2007). Appealing to the covenant

We must tie up one more loose end. When Northbound filed this suit, Norvax stopped paying the monthly "earn-out" that was owed to Northbound under the asset purchase agreement. The district court denied summary judgment for Northbound on this claim, finding a genuine issue regarding the proper amount of the accrued earn-out. The parties then stipulated that $45,000 was the amount of the withheld earn-out. The district court entered a stipulated final judgment to that effect. Norvax then paid that amount to Northbound.

Northbound argues on appeal that it should be relieved of this stipulation because it agreed to the stipulation only in the face of an erroneous ruling by the district court on the evidence it would consider. But that is why parties have the ability to appeal. Stipulations are made for a reason—to resolve disputed issues conclusively, without trial or further dispute. See *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir. 1998) (enforcing stipulation to bar argument on appeal). A party cannot avoid such a stipulation by saying merely that it thought the court was going to err by ruling against it. "To hold anything else would be to reduce stipulations to mere inconsequential gestures." *Id.*, quoting *United States v. Sandles*, 80 F.3d 1145, 1148 (7th Cir. 1996).

The district court's judgment is AFFIRMED.

---

could help Northbound only if it offered some other basis for holding Norvax liable under the asset purchase agreement to which it was not a party.